[No. 12215. Department One. April 29, 1915.]

ERNEST KUEHL, *Respondent*, v. THE CITY OF EDMONDS, *Appellant*.[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—ASSESSMENTS—LIMITATIONS—ESTIMATED COST—REASSESSMENT—POWER OF CITY AND LEGISLATURE—REPEAL OF LAW—EFFECT. Where a local improvement was made by a third-class city, under Rem. & Bal. Code, § 7705, limiting the city's power of assessment to an amount equal to the estimated cost, the property owner may rely thereon as a limitation on the jurisdiction of the city, and the legislature cannot, by a subsequent act, repeal the limitation as to improvements already made; hence the act of 1911, 3 Rem. & Bal. Code, §§ 7892-42, 7892-43, repealing § 7705 and authorizing the city to make supplemental or reassessments to cover the actual cost of the improvement can have no application to an improvement previously made under the limitation of § 7705, and confers no power on the city to reassess for any sum in excess of the estimate.

SAME—CURATIVE ACTS. Authority to make a reassessment under such act cannot be sustained on the theory of the power to pass curative acts, since there was no invalidity within the limitation, which subsequent legislation could not change after it had been acted upon by both the city and the property owner.

Reported in 148 Pac. 19.

SAME — ASSESSMENTS — OBJECTIONS — WAIVER — JURISDICTIONAL
QUESTIONS. Where a local improvement was made by a third-class
city under Rem. & Bal. Code, § 7705, which limited the city's power
of assessment to an amount equal to the estimated cost of the im-
provement, the failure of property owners to object at certain stages
of the proceedings does not preclude them from raising the juris-
dictional objection that the assessment exceeded the cost of the im-
provement; especially where, by 3 Rem. & Bal. Code, §§ 7892-42,
7892-43, the property owners were only permitted to raise objections
to the existence and amount of the benefits.

Appeal from a judgment of the superior court for Sno-
homish county, Alston, J., entered May 27, 1914, in favor
of the plaintiff, setting aside a reassessment on appeal from
the order of the city council confirming the roll. Affirmed.

*Preston & Thorgrimson* and *Turner & Hartge*, for appel-
lant.

*Earl W. Husted*, for respondent.

CHADWICK, J.—In 1909, the city of Edmonds provided
by ordinance for the improvement of Dayton street. It was
held in the case of *Peabody v. Edmonds*, 68 Wash. 610, 123
Pac. 1018, that an assessment to the extent of $6,025.74
would be valid. This case followed, and was decided upon
the authority of, *Chehalis v. Cory*, 54 Wash. 190, 102 Pac.
1027, 104 Pac. 768. We understand from the record that an
assessment was levied and payments have been made by indi-
vidual property owners in accordance with the judgment of
this court. Reference to our former decision will show that
the estimated cost of the improvement was $6,025.74, whereas
the actual cost was $8,317.33. The former judgment took no
account of interest which had accumulated upon the warrants
from the date of their issuance up to the time of levying the
assessment, which amounted to $1,366.

The legislature, at its session held in 1911, rewrote the law
authorizing reassessments for public improvements, and in
terms repealed that section of the statute, Rem. & Bal. Code,
§ 7705, wherein cities of the third class were limited in their

power of assessment to an amount within or equal to the estimated cost. The power to reassess and the conditions warranting a reassessment are contained in §§ 42 and 43 of the act, the material parts of which we have quoted and italicized in such manner as to best emphasize the contentions of the appellant:

"In all cases of special assessments for local improvements, wherein said assessments have failed to be valid in whole or in part for want of form or insufficiency, informality, or irregularity or nonconformance with the provisions of law, charter or ordinance governing such assessments in any city or town, the council of any such city or town shall have power to reassess such assessments and to enforce their collection in accordance with the provisions of law and ordinance existing at the time the reassessment is made.

"*Whenever, on account of any mistake, inadvertence or other cause, the amount assessed shall not be sufficient to pay the cost and expense of the improvement made and enjoyed by the owners of property* in the assessment district where the same is made, the council of such city or town is authorized and directed to make reassessments on all the property in said assessment district to pay for such improvement; such assessment to be made in accordance with the provisions of law and ordinance existing at the time of its levy. Any city or town is hereby authorized to assess or reassess all property which the council shall find to be specially benefited to pay the whole or any portion of the cost and expense of any local improvements which such city or town has heretofore made, is now making, or may hereafter make at the expense in whole or in part of property specially benefited thereby, whether or not such property so to be assessed or reassessed abuts upon, is adjacent to, or proximate to such improvement, or was included in the original district; *and the right to so assess all property so found to be specially benefited shall also apply to any supplemental assessment or reassessment which such city or town may find it necessary to make for the purpose of providing for any deficiency in any local improvement district fund caused by the invalidity of any portion of the original assessment in such improvement district, or where for any cause the amount originally as-*

*sessed shall not be sufficient to pay the cost of the improve-
ment.*

"Whenever any assessment for any local improvement in
any city or town, whether the same be an original assess-
ment, assessment upon omitted property, supplemental as-
sessment or reassessment, heretofore or hereafter made, has
been or may hereafter be declared void and its enforcement
[refused] by any court, or for any cause whatever has been
heretofore or hereafter may be set aside, annulled or de-
clared void by any court, either directly or by virtue of any
decision of such court, the council of such city or town shall
make a new assessment or reassessment upon the property
which has been or will be benefited by such local improve-
ment, based upon the actual cost of such improvement at
the time of its completion. . . .

"The fact that the contract has been let or that such im-
provement shall have been made and computed in whole or
in part shall not prevent such assessment from being made,
*nor shall the omission, failure or neglect of any officer or of-
ficers to comply with the provisions of law, the charter or
ordinances governing such city or town, as to petition, no-
tice, resolution to improve, estimate, survey, diagram, man-
ner of letting contract or execution of work, or any other
matter whatsoever connected with the improvement and the
first assessment thereof, operate to invalidate or in any way
affect the making of any assessment authorized in the pre-
ceding section:* Provided, That such assessment shall be
for an amount which shall not exceed the actual cost and ex-
pense of the improvement, together with the accrued interest
thereon, it being the true intent and meaning of this act to
make the cost and expense of local improvements payable by
the property specially benefited thereby, notwithstanding
the proceedings of the council, board of public works or
other board, officer or authority of such city or town may be
found irregular or defective, whether jurisdictional or oth-
erwise; when such assessment is completed, all sums paid on
the former attempted assessment shall be credited to the
property on account of which the same were paid." Laws of
1911, ch. 98, pp. 441, 468, 469, §§ 42, 43; 3 Rem. & Bal.
Code, §§ 7892-42, 7892-43.

It will be seen that the legislature has attempted to grant
a power to make a reassessment, or, as is sometimes said in

the body of the act, a supplemental assessment, and that it shall not be prevented from so doing because of

"the omission, failure or neglect of any officer or officers to comply with the provisions of law, the charter or ordinances governing such city or town, as to petition, notice, resolution to improve, *estimate*, survey, diagram, manner of letting contract or execution of work, or any other matter whatsoever connected with the improvement and the first assessment thereof, operate to invalidate or in any way affect the making of any assessment authorized in the preceding section." 3 Rem. & Bal. Code, § 7892-43.

The only limitation being that the reassessment shall not put a burden upon the property already assessed, beyond actual costs and expenses of the improvement, together with accrued interest.

After our former decision had been pronounced, we were asked to recall the remittitur and to make some suggestion with reference to remedies. This the court declined to do. *Peabody v. Edmonds*, 72 Wash. 604, 131 Pac. 250. Those interested in securing payment for the work done thereupon induced the council of the city of Edmonds to levy an assessment under the authority which it is contended was given by the legislature in 1911, to cover the difference between the estimated cost and the actual cost of the improvement. There is no showing in this case that the council acted fraudulently or are in any way guilty of bad faith. It is a question of power only. When the supplemental assessment had been made, interested property owners appealed from the order of the council to the superior court. The superior court held that the council had no power to make a reassessment, and further, that our former decision was *res judicata* of the amount which could be lawfully assessed against the property. Many of our decisions are cited and discussed, but it seems to us that the question to be decided has never been before the court.

We have held in several cases that it is within the power of the legislature to put a limitation upon the power of a

city council to proceed in matters of this kind. The power to limit the amount of the assessment and the reasons for sustaining such limitations are adverted to in *Van Der Creek v. Spokane*, 78 Wash. 94, 138 Pac. 560, and *Chehalis v. Cory, supra.*

The basis of appellant's contention is that the power of reassessment given under the act of 1911 is remedial, and inasmuch as the legislature might have dispensed with the requirement that the cost of the improvement should not exceed the estimated cost in the first instance, it can now say that a failure to comply with such a limitation should not be a bar to a reassessment to cover the difference between the actual cost and the estimated cost, so long as the estimated cost does not exceed the value and amount of benefits.

The supplemental proceedings and the ordinance effectuating it proceed upon the theory that the property "was benefited in an amount at least equal to the entire cost of said improvement;" that is to say, the council assumed that the limitation contained in Rem. & Bal. Code, § 7705, as construed in the case of *Chehalis v. Cory*, was repealed in so far as past improvements and those in process of completion are concerned.

It would seem to us that, if this had been the intention of the legislature, it would have so provided in terms, and would not have left a question so important, and one to which its attention must have been especially drawn by the decision in the case of *Chehalis v. Cory*, to construction. The basic principle underlying the *Cory* case and our former decision in this case is that, where the legislature has granted a general power or a power with limitation, a city, in the exercise of that power, may so conduct itself as to work an estoppel, and the relative rights of the property owner and the city will be fixed and determined by reference to the law as it existed at the time. The purpose of a city to levy an assessment for a sum no greater than the estimated cost was to give some guarantee of the cost and afford the property

owner an opportunity to protest against the improvement
because of its probable cost.   As we said in the *Van Der
Creek* case,

"Prior to the enactment of this law, the only limitation fixed
by general law upon the taxing power of the city in matters
of this kind was that they should keep within the range of
benefits, the amount of which was too often fixed arbitrarily
and without right or reason and, being always determined at
the discretion of the board of commissioners, could not, in the
absence of a positive or constructive fraud, be reviewed by
the courts.   Clearly there was a mischief made possible by
an existing law, and it was the manifest purpose of the act
of 1911 to remedy this and to prevent a recurrence of exist-
ing abuses which had at times resulted in confiscation."

While this was said by the court having in mind the gen-
eral law and not the law pertaining to third class cities, its
reasoning is nevertheless applicable to the case at bar.   This
is clear when it is considered in connection with the case of
*Chehalis v. Cory*, which was in effect a holding that the pub-
lication of the estimated cost was in the nature of a contract
that was binding upon the city.

We may assume, as a matter of law and practice in all
cases of this kind, that the sum estimated is a fair amount to
be allowed for the improvement; that it is the limit of power
and is binding upon the city.   If it is not so, the legal effect
of the statute of 1911 is to permit the council of cities of the
third class, where improvements have been made under the
former law, to assess the cost without reference to the law un-
der which the improvement was made, and thus destroy the
right of the individual property owner to protest or to be
heard in remonstrance.

"The obvious purpose of the estimate is to advise the
property owners of the probable expense of the proposed im-
provement, that they may protest against it if it exceeds
what they are willing to pay for the improvement.   It re-
quires no argument to show that, when the actual cost is
grossly in excess of the estimated cost, the publication of the
estimate is much more prejudicial to the interests of the

property owner than if no estimate whatever had been given. It is actually misleading. If no estimate be given, he could, in response to the published notice, protest against further proceeding until it be furnished, and, if overruled, would not be estopped to enjoin the enterprise or contest the assessment on that ground. But where an estimate is given, he has the right to rely upon it, and the city should be estopped to assert any jurisdiction to exceed the estimate in the actual cost assessed. Since the legislature might have dispensed with any estimate, the failure of the council to make any would doubtless be held an irregularity which might be waived by failure to protest. This is also on the ground of estoppel; but obviously no estoppel against the property owner can be grounded upon his action induced by erroneous information upon which he had the legal right to rely." *Collins v. Ellensburg*, 68 Wash. 212, 122 Pac. 1010.

To sustain this proceeding is to say that the property owners have no rights that cannot be destroyed by the legislature. We are willing to grant that the legislature may define any procedure or amend in any way an existing procedure pending the collection of a lawful tax for the cost of an improvement within the limit of the authority possessed by the city, but it does not follow that, by a definition of remedies, the legislature can give a municipality a power that it did not possess when the proceeding was initiated. Where the statute contemplates the formal presentation of protests, remonstrances and the like at certain stages of the proceedings, it is universally held that the property owner who fails to make such objection is precluded from doing so at a later stage when the improvement has been completed and the benefits secured. *McNamee v. Tacoma*, 24 Wash. 591, 64 Pac. 791; *Annie Wright Seminary v. Tacoma*, 23 Wash. 109, 62 Pac. 444; *New Whatcom v. Bellingham Bay Imp. Co.*, 16 Wash. 131, 47 Pac. 236; *Tumwater v. Pix*, 18 Wash. 153, 51 Pac. 353; Page and Jones, Taxation by Assessment, § 1026, where the cases are collected.

It would follow, then, where the property owner has been satisfied with the estimate and has allowed the improvement

to go without protest, that he would be without opportunity or remedy, for the act of 1911, Laws 1911, pp. 468, 469, §§ 42 and 43 (3 Rem. & Bal. Code, §§ 7892-42, 7892-43), confessedly does not go further than to permit the property owner to object to the existence and amount of benefits. Such opportunity may be postponed without harm to the property owner; but the right to question the power of the council, or as it is sometimes called, jurisdiction, cannot be taken away by a subsequent statute going only to a procedure for the collection of an assessment or reassessment. In other words, the limit of power under the act of 1911 is to make all necessary assessments, reassessments or supplemental assessments within the limit of the sum fixed by the law governing the improvement at its inception. The act does not assume to change the limit which can be assessed for benefits. When it says that the property may be reassessed to the amount of benefits, it means the amount of benefits as defined by the law existing at the time the improvement was made. When read in its entirety, the act assumes only to cover cases where the assessment has failed because of informality or mistake in procedure. Indeed, it seems to exempt all matters pending, and *a fortiori*, those already closed by the final action of the council or by proceeding in court. It says:

"All actions and proceedings, which may be pending in court under existing laws which this act in any way supersedes or repeals, shall proceed without being in any manner affected by the passage of this act. All proceedings commenced by any city or town before the taking effect of this act, relating to the making of any local improvement, shall proceed without being in any manner affected by the passage of this act, except as provided in section 24 of this act." Laws of 1911, ch. 98, p. 480, § 70 (3 Rem. & Bal. Code, § 7892-70.

Nor does our conclusion in any way challenge the many holdings of this court that the legislature may, by a curative act, supply any omission or validate any proceeding, however informal, leading up to the assessment. *Frederick v. Seattle*,

13 Wash. 428, 43 Pac. 364; *Cline v. Seattle*, 13 Wash. 444, 43 Pac. 367; *Lewis v. Seattle*, 28 Wash. 639, 69 Pac. 393; *Waldron v. Snohomish*, 41 Wash. 566, 83 Pac. 1106. These cases are to be distinguished. The *Frederick* case is a type. The power to make local improvements and levy assessments to pay for the same is, and it was so held in that case, in the legislature. It might have done directly what the city of Seattle had done without the warrant of a statute. It followed, as of course, that the legislature might validate the proceeding and permit an assessment within the limit of benefit. The property owner could not complain. He was only made subject to the admitted power of the legislature and his property was assessed within the limit of benefit. His position was no worse than it would have been had the law been on the statute books at the time the improvement was made.

In the case at bar, there was no invalidity. The city had been granted power to make assessments, but the legislature had put a limitation upon the grant. The council acted in excess of its authority in a certain and measurable degree. There was no authority to assess for more than the estimate at the time the improvement was made, and of course no subsequent legislation could change that limitation after the city and the property owner had acted upon it. Nor can there be any estoppel.

"If the authority of the city to levy and collect the assessment was limited to $6,000, appellant and its contractor were presumed to have known that fact when they contracted for the improvement, and when appellant attempted to levy the larger assessment. They could not, and did not, rely upon subsequent acts of the respondents, when they entered into the contract, and jurisdiction to make a larger assessment should not be now held to have been conferred upon appellant in the manner urged." *Chehalis v. Cory*, 64 Wash. 367, 116 Pac. 875.

"The case is altogether different from one where, having authority to proceed, irregularities and defects in the subsequent proceedings thereafter occur, which do not have the

effect to take away or impair any substantial right of a party interested." *Zalesky v. Cedar Rapids*, 118 Iowa 714, 92 N. W. 657.

In *Town of Bellevue v. Peacock*, 89 Ky. 495, 12 S. W. 1042, 25 Am. St. 552, the court, in passing upon a question very like the one here presented, said:

"The statute now in question is not merely remedial in its character. When the contract was made for the improvement of the street no right existed to look to the abutting lot-owner for payment. By the general law he was not liable. The statute alone in such a case creates his liability. If A or B, subsequent to the improvement, purchased lots adjoining it, their property would certainly not be liable for its cost in the absence of a statute so providing; and this is equally true, although the purchase was made with knowledge that the party making the improvement had not been paid. Especially would this be so if the highest judicial authority of the jurisdiction had already held that the property was not liable. It is equally true that a person who owned an abutting lot when the contract for the improvement was made, and yet owns it, may defend against the statute in question. When the contract was entered into the town had no authority, express or implied, to bind his property for the cost of the improvement, and when the statute, by virtue of which relief is now asked, was enacted, there was no pre-existing right as against him, or to look to his property. In short, the Legislature, by this act, has attempted to afford a remedy against a party as to whom no right, legal or equitable, existed. As was said in the case of *Hasbrouck v. City of Milwaukee, supra:* 'It (the Legislature) would, of its own mere motion, create an obligation where, by law, none before existed. It would impose a liability against the will and without the consent of the party to be charged. This the Legislature cannot do. It can only act retrospectively for the purpose of furnishing a remedy for or removing an impediment in the way of the enforcement of some pre-existing legal or equitable right or duty, and not for the purpose of creating such right or duty.'

"If legal or equitable rights or obligations have arisen between the parties to a transaction, have grown up out of their previous lawful acts, and exist independently of some

want of formality or irregularity which prevents their enforcement, then the Legislature may provide a remedy, but it cannot provide for the enforcement of a non-existing right."

In other words, the rights and obligations of the parties to this suit are fixed by a lawful act duly exercised. The legislature could not, by any subsequent retroactive act, grant a power to the municipality to go beyond the limit—the estimate—for the legislature itself would not have the power to do so. Legislatures cannot ignore executed obligations or proceedings if lawful, and by retroactive legislation substitute another to the advantage of one of the contracting parties or to the disadvantage of the other.

"So he who was never bound, either legally or equitably, cannot have a demand created against him by mere legislative enactment." Cooley, Constitutional Limitations (7th ed.), p. 528.

See, also, *App v. Town of Stockton*, 61 N. J. L. 520, 39 Atl. 921.

Appellant makes earnest contention that, in any event, the reassessment should be sustained to the extent of the interest which had accumulated upon the warrants between the time they were issued and the time the assessment was made.

Under the law as it existed at that time, the limit of the assessment was the amount of the estimate, and we are bound to assume on the record that is submitted, that the assessment was sufficient to cover all lawful demands. It does not appear that there was any appeal from the final assessment. As we have heretofore noticed, the proceeding and ordinance take no account of accumulated interest. It purports only to make an assessment for a sum sufficient to bear the cost of the improvement, upon the theory that such sum is within the limit of general benefits.

We find no error. The judgment is affirmed.

MORRIS, C. J., PARKER, HOLCOMB, and MOUNT, JJ., concur.