[No. 12502. Department Two. November 9, 1915.]

THE CITY OF CHEHALIS, *Appellant*, v. GEORGE A. ROBINSON, *Appellant*, AND A. R. BECHAUD *et al.*, *Appellants*.[1]

JUDGMENT—RES JUDICATA—MATTERS CONCLUDED. The question of the amount due from a city to a contractor on a street improvement is not an issue in an action by the city against part of the property owners to foreclose an assessment, which was contested by the nonpaying owners on the ground that the contract was let for two and one-half times the estimated cost, where the foreclosure judgment simply limited the assessment against such owners to their *pro rata* share of the estimated cost.

MUNICIPAL CORPORATIONS—IMPROVEMENTS — ASSESSMENTS—EXCESS PAYMENTS—RIGHTS OF CONTRACTOR. A contract for an improvement, let in excess of the estimated cost, is valid, as between the city and the contractor, and the latter is entitled to a fund derived from paid-up assessments collected by the city in excess of the estimated costs to which the assessments should have been limited if objection had been made.

JUDGMENT—RES JUDICATA—MATTERS CONCLUDED. The question of the amount due from a city to a contractor on a street improvement, by reason of collections made by the city in excess of the estimated costs, is not in issue or concluded in an action by the contractor in mandamus to compel the city to levy a reassessment to cover the deficiency in the fund by reason of the inability of the city to make all the collections assessed in excess of the estimates, where the mandamus proceeding was merely dismissed because of the want of power by the city to make any such reassessment.

MUNICIPAL CORPORATIONS—IMPROVEMENTS—REASSESSMENTS—LIMITATIONS—STATUTES—WHAT LAW GOVERNS. 3 Rem. & Bal. Code, §§ 7892-42 and 7892-43, authorizing reassessments or supplemental as-

[1]Reported in 152 Pac. 696.

sessments to the amount of the benefits received, means the benefits as defined by the law existing at the time the improvement was made; hence a city of the third class, whose power to levy the original assessment was limited to the amount of the estimated cost, cannot make a reassessment in excess of such estimate.

SAME—IMPROVEMENTS—EXCESS PAYMENTS—RECOVERY—RIGHTS OF OWNERS—STATUTES. Where a city of the third class had let a contract for a street improvement for a sum in excess of the estimated costs, and part of the property owners had voluntarily paid the excess assessment, making a fund in excess of the estimated costs but insufficient to pay the contractor, the property owners cannot recover such excess payments, under Rem. & Bal. Code, § 7892, since that section only authorizes recovery by property owners where a fund has been created, "after payment of the whole cost and expense of the improvement," and was enacted only to meet a past condition under former laws whereby such funds could be accumulated prior to the doing of the work.

Cross-appeals from a judgment of the superior court for Lewis county, Rice, J., entered April 27, 1914, upon findings in favor of certain claimants, in an action to contest the ownership of a fund deposited in court in payment of a local assessment. Reversed upon Robinson's appeal.

*Forney & Ponder*, for appellant Robinson.

*W. A. Reynolds*, for appellant City of Chehalis.

*S. C. White* and *W. W. Langhorne*, for appellants Bechaud *et al.*

FULLERTON, J.—On February 18, 1907, the city of Chehalis, a city of the third class, by resolution declared its intention to improve certain portions of Cascade avenue, a street in such city, at the expense of the abutting property holders. The resolution conformed in its recitals to the requirement of the statute then in force relative to the initiating a street inprovement in cities of the third class, and, among other things, stated the estimated cost of the improvement to be $6,000. A time was appointed for hearing protests against the proposed improvement, and, after such hearing, an ordinance was passed creating an assessment

district, directing the improvement to be made, and providing that the costs thereof, save the costs of putting in the street intersection, should be borne by an assessment upon the property in the district created which would be benefited by the improvement. Thereafter, a call for bids for performing the work was made, and a contract let for the work to the appellant Robinson for the sum of $14,812.50. After the contract was let, the city caused an assessment to be levied upon the property located in the assessment district for the amount of the contract price and the expenses it had incurred in the prosecution of the proceedings, less $2,912.66, the costs of the street intersections, which the city paid from its general fund. The assessment roll was placed in the hands of the city treasurer for collection, and subsequent thereto, certain of the property holders voluntarily paid the amounts of their respective assessments, the total aggregating, when taken with the amount paid by the city, the sum of $9,313.72. This sum was paid over to the contractor.

Certain of the property holders, however, refused to pay their assessments, and foreclosure proceedings were begun against them to recover the amount thereof. The property holders thus sued defended against the foreclosure, and obtained a judgment of the court to the effect that they were liable to pay on account of the assessment on a basis of the original estimate of the cost instead of the actual cost; that is, on a basis of a liability to the amount of $6,000 instead of $15,259. The sums for which the defendants were so held liable aggregated $2,382.91, and this sum was paid into the registry of the court by them in satisfaction of the assessment levied upon their respective properties, and subsequently, on the order of the court, paid over to the city treasurer. After this sum had been paid to the city treasurer, certain of the abutting property holders who had theretofore voluntarily paid the amounts assessed against their several properties filed claims with the city treasurer, severally contending that they had paid, on account of the assessments,

a sum in excess of the amount that could be lawfully collected from them, and asked that they be allowed a refund to the amount of the excess so paid.

The city of Chehalis also claimed a rebate out of the sum paid in, on account of expenses paid by it in the prosecution of the improvement proceedings and on account of an alleged overpayment for paving the intersections of the streets. The contractor claimed the fund on account of the balance remaining unpaid upon his contract. The city thereupon again paid the money into the registry of the superior court and filed a complaint in interpleader therein, setting out the facts leading up to its acquisition of the fund, the fact that various claims had been made thereto, and asked the court to adjudge to whom the fund rightly belonged. The property holders claiming a refund appeared in the action and filed answers contesting the claim of the city and the contractor to any part of the fund, and contending that the contractor had been wrongfully paid by the city a sum in excess of the amount he was lawfully entitled to under his contract; namely, the sum of $3,313.72, being the difference between $6,000, the sum the court had held could be lawfully collected from the property holders, and $9,313.72, which had been voluntarily paid in by them; praying that the city be required to pay the latter sum, with interest, into the registry of the court, and that the total of these sums be refunded to the property holders voluntarily paying their assessments, in proportion to the respective amounts so paid.

While the action was pending in this condition, the contractor instituted a proceeding in mandamus in the superior court against the city of Chehalis,

"to require it to make re-assessment to pay him the balance alleged by him to be due under his contract with the city in the sum of $5,498.78, to which the city filed an answer denying its liability and alleging that he had been overpaid the sum of $3,313.72, and denying his right to a reassessment.

"That A. S. Cory, A. R. Bechaud, Ed. Deggeller, and other property owners in said local improvement district No. 42 by leave of court intervened in said mandamus proceedings and contested the right of Robinson to re-assess any property owner in said district, alleging he had been overpaid as aforesaid; that the property in said improvement district had not been benefited exceeding $6,000. (All proceedings in the interpleader case aforesaid was by agreement of counsel stayed until the determination of said mandamus.) Said proceedings came on to be tried on the — day of June, 1912, before Judge Mason Irwin at Chehalis, evidence was introduced on both sides and the case tried on the issues and on the merits, and on the — day of March, 1913, said court made and entered its findings of fact and judgment denying Robinson's petition and dismissing said proceedings with costs against Robinson. No appeal was ever taken by Robinson from said findings and final judgment and decree and the same stands in full force and effect."

After the termination of the mandamus proceedings, the contractor answered in the interpleader action, making claim to the fund then in the registry of the court, on the theory that it had been paid to the city for his benefit. Other persons voluntarily paying their assessments made no claim to the fund or appearance in the action, and certain others filed a writing disclaiming any interest in the fund, and asked that any sum that might have been lawfully due them had they made claim thereto be paid over to the contractor.

The court heard the parties appearing, and, at the conclusion of the hearing, adjudged that the city of Chehalis had a claim upon the fund in the registry of the court to the extent of the costs paid by it on account of the improvement, such as publishing the resolution and ordinance, cost of supervision, inspection, and the like, amounting to the sum of $346.15, but was not entitled to any further recovery; adjudged that the balance be pro-rated among the property holders who had paid their assessments in full, regardless of whether they had or had not made claim to the fund, and regardless of whether they had or had not waived any claim

thereto; adjudged that the refund claimants were not entitled to recover against the city for the amount of the claimed overpayment to the contractor; and adjudged that the contractor was not entitled to any part of the fund. All of the parties appeal.

The assignments of error of the several appellants, while logically arranged from the viewpoint of counsel, cannot well be noticed in the order in which they are presented without needless repetition; but as they present certain fundamental questions, we shall discuss them without regard to which of the appellants made the specific assignment suggesting the question.

As a basis for its judgment against the contractor, the trial court found that he had been "more than fully paid all to which he was lawfully entitled" under his contract, and consequently was entitled to receive no part of the fund then in the registry of the court. This finding and conclusion was rested on the judgment entered in the action brought to foreclose the lien of the assessment against the delinquent property holders. But that judgment, it is manifest, determined nothing more than the matter at issue therein. The defendants in that action contended that their property was not liable to any assessment on account of the improvement because of the error of the city in first estimating the cost of the work at a certain sum and then, without further notice to the property owners, letting a contract for the performance of the work at a cost exceeding two and a half times the estimated cost; while the city's contention was that the property was liable for the full amount of the assessment. The court, however, in its final judgment, did not adopt either of these contentions. It held the property of the defendants liable to an assessment on the basis of the original estimate, and directed a decree of foreclosure for that amount. The question at issue, therefore, was the amount of the defendants' liability, and that question only was adjudicated in the action. The question of the amount the contractor was en-

titled to recover under the contract was not in issue in the proceedings and consequently was not determined thereby. Nor do we think the principle involved and determined in the foreclosure proceedings determines the question.

It is true, of course, that, had all the property holders in the assessment district followed the course taken by the defendants in the foreclosure suit, the city could not have recovered against them in excess of the estimated cost of the work. And, it is probably true, also, that in such a case, since the city incurred no personal liability by the execution of the contract, the ultimate recovery of the contractor would have been limited to the amount recovered by the city: namely, the estimated cost of the work. But it does not follow that, under other conditions and under other circumstances, the result must be the same. On the contrary, the contract, as between the contractor and the city, was a valid obligation to the full extent of its terms. The mistake in the preliminary proceedings which prevented the collection of the assessment to the full sum levied was the mistake of the city. With it the contractor had nothing to do. Being a mistake of law of which he might have taken notice, he, of course, must bear the brunt of the loss. But his rights are superior to those of the city, and he is entitled, as between himself and the city, to any sum up to the amount of his contract which the city has collected on account of the assessment, and which it is not bound by some superior obligation to turn over to some one else.

Again, it is contended that the contractor is barred from asserting any right to the fund now in court, by reason of the judgment in the mandamus proceedings wherein he sought a reassessment of the property benefited. We have quoted in the statement all that the record contains concerning those proceedings. It will be observed therefrom that, while certain of the property holders intervened in that proceeding and alleged that the contractor had been overpaid, and that the property of the assessment district had not been benefited

in a sum exceeding $6,000, it is not shown that the court determined these questions, or that they were necessary to be determined in order to sustain the judgment entered by the court. On the contrary, the judgment was simply a judgment dismissing the proceedings with costs against the contractor; a judgment which necessarily must have followed had these questions been determined against the interveners. This is clear from the nature of the case. Under the law then existing governing the procedure for levying assessments for street improvements in cities of the third class, as we had theretofore and have since construed it, there can be no reassessment of property benefited in excess of the original estimate, even though such estimate fall below the contract price or actual cost of the improvement. The principle involved is stated in *Kuehl v. Edmonds*, 85 Wash. 307, 148 Pac. 19 (where also will be found the sustaining authorities), in the following language:

"To sustain this proceeding is to say that the property owners have no rights that cannot be destroyed by the legislature. We are willing to grant that the legislature may define any procedure or amend in any way an existing procedure pending the collection of a lawful tax for the cost of an improvement within the limit of the authority possessed by the city, but it does not follow that, by a definition of remedies, the legislature can give a municipality a power that it did not possess when the proceeding was instituted. Where the statute contemplates the formal presentation of protests, remonstrances and the like at certain stages of the proceedings, it is universally held that the property owner who fails to make such objection is precluded from doing so at a later stage when the improvement has been completed and the benefits secured. *McNamee v. Tacoma*, 24 Wash. 591, 64 Pac. 791; *Annie Wright Seminary v. Tacoma*, 23 Wash. 109, 62 Pac. 444; *New Whatcom v. Bellingham Bay Imp. Co.*, 16 Wash. 131, 47 Pac. 236; *Tumwater v. Pix*, 18 Wash. 153, 51 Pac. 353; Page and Jones, Taxation by Assessment, § 1026, where the cases are collected.

"It would follow, then, where the property owner has been satisfied with the estimate and has allowed the improvement

to go without protest, that he would be without opportunity or remedy, for the act of 1911, Laws 1911, pp. 468, 469, §§ 42 and 43 (3 Rem. & Bal. Code, §§ 7892-42, 7892-43), confessedly does not go further than to permit the property owner to object to the existence and amount of benefits. Such opportunity may be postponed without harm to the property owner; but the right to question the power of the council, or as it is sometimes called, jurisdiction, cannot be taken away by a subsequent statute going only to a procedure for the collection of an assessment or reassessment. In other words, the limit of power under the act of 1911 is to make all necessary assessments, reassessments or supplemental assessments within the limit of the sum fixed by the law governing the improvement at its inception. The act does not assume to change the limit which can be assessed for benefits. When it says that the property may be reassessed to the amount of benefits, it means the amount of benefits as defined by the law existing at the time the improvement was made. When read in its entirety, the act assumes only to cover cases where the assessment has failed because of informality or mistake in procedure. . . .

"In other words, the rights and obligations of the parties to this suit are fixed by a lawful act duly exercised. The legislature could not, by any subsequent retroactive act, grant a power to the municipality to go beyond the limit—the estimate—for the legislature itself would not have the power to do so. Legislatures cannot ignore executed obligations or proceedings if lawful, and by retrocative legislation substitute another to the advantage of one of the contracting parties or to the disadvantage of the other."

From the foregoing it is plain that the contractor is in no manner estopped to claim the fund now in the registry of the court, and it is equally plain that the city has no right to the fund even to the extent it was allowed to recover by the trial court. The contractor, however, conceded in that court the city's right to the sum awarded it, and makes the same concession here. For this reason we shall not disturb the award made to it, but will deny to it the right to prevail on its appeal to the extent of a further recovery.

Turning to the specific contentions of the appealing prop-
erty holders, it will be remembered that they voluntarily paid
into the city treasury the full amount of their several assess-
ments, and that the sums so paid in by them were turned
over by the city to the contractor in part satisfaction of his
demand against the city for the actual work of improving
the streets. It will be remembered, also, that the fund now
in the registry of the court is no part of the sums so paid
in by them, but is the fund paid in by the property owners
who resisted the foreclosure proceedings. This proceeding
is, therefore, as to them, in effect, a suit to recover money
voluntarily paid in an assessment proceeding under mistake
of law. They concede that money so paid cannot, in the
absence of a statute permitting it, ordinarily be recovered
by suit, but contend that we have a statute directly so per-
mitting it, and on this statute they rely, not only to sustain
the award made them by the trial court, but to sustain their
claim to a recovery against the city and the contractor of the
sum paid the contractor in excess of the original estimate.
The statute referred to is the act of March 13, 1909, found
in Rem. & Bal. Code, § 7892. The section reads as follows:

"Any funds in the treasury of any municipal corporation
belonging to the fund of any local improvement district after
the payment of the whole cost and expense of such improve-
ment, in excess of the total sum required to defray all the
expenditures by such municipal corporation on account
thereof, shall be refunded, on demand, to the payers into
such fund. Each such payer shall be entitled to such pro-
portion of such excess as his original assessment bears to the
entire original assessment levied for such improvement. Such
municipal corporation may, after one year from the date on
which the last installment becomes due, transfer any balance
remaining on hand to the general fund of such municipal cor-
poration, but shall, notwithstanding such transfer remain
liable for the refund herein provided for until such refund
shall have been made, unless the actual cost involved in mak-
ing such refund shall exceed the excess in such fund.

"Such demand shall be made in writing to the treasurer of such municipal corporation. No action shall be commenced in any court to obtain any such refund, except upon such demand, and, in all cases where the assessment roll shall have been·filed with the treasurer of such municipal corporation for collection on or after the day this act shall take effect, until ninety days after making such demand, and in all cases where such assessment roll has heretofore been filed for collection, until six months after making such demand in accordance herewith. No excess shall be recovered in any action where the excess in the fund does not average the sum of one dollar in favor of all payers into such fund."

But we are of the opinion that the statute will not bear the construction necessary to be put upon it in order to sustain the appellants' contention. Looking to the letter of the act, it will be seen that it makes no reference to the precise question suggested by the facts in the case at bar. The refund is directed in a case where an excess remains "after the payment of the whole cost and expense" of the improvement; no provision is made for a refund where the sum paid is less than such cost and expense, although in excess of the sum that could have been lawfully collected from the property holders. Nor do we think the contention is within the purpose or intent of the statute. At the time of its enactment, a condition existed to which it was applicable. Under statutes and ordinances operative in certain municipalities, an assessment could be levied to meet the expenses of a public improvement in advance of the actual improvement, or the actual letting of a contract for the work of the improvement, based on an estimated cost of the work. It was found that these estimates sometimes, if not generally, exceeded the actual cost and expense of the work, and that a fund remained in the possession of the municipality after all of the costs chargeable thereto were satisfied. In *Miller v. Seattle*, 50 Wash. 252, 97 Pac. 55, and *State ex rel. McCullough v. Seattle*, 53 Wash. 655, 102 Pac. 770, this court held that this surplus could not be recovered from the municipality col-

lecting it, by the parties paying it in, without a compliance with the conditions imposed by the municipality as a prerequisite to such recovery, which in some instances were somewhat exacting. The act in question was intended to relieve against these conditions. Recognizing the fact that the municipality had no moral right to the fund, and that, in equity and good conscience, it belonged to the persons paying it to the municipality, the legislature passed the statute to remove the conditions imposed by the municipality as a prerequisite to a recovery. *State ex rel. McCullough v. Seattle*, 60 Wash. 241, 110 Pac. 1008. Both in language and intent the act is applicable to this purpose, but in neither is it applicable to the purpose with which the appellants claiming a refund in the case at bar seek to charge it.

Our conclusion is that neither the appealing property holders nor those not appealing are entitled to any part of the fund in question now in the registry of the court; that the city of Chehalis is entitled from such fund to the sum of $346.15; and that the contractor is entitled to the remainder thereof. The judgment is therefore reversed, and the cause remanded with instructions to enter a judgment in accordance with this conclusion.

MORRIS, C. J., MAIN, and ELLIS, JJ., concur.