[No. 14121. Department Two. June 30, 1917.]

THE STATE OF WASHINGTON, *on the Relation of National Bank of Tacoma, Appellant*, v. THE CITY OF TACOMA *et al., Respondents.*[1]

MUNICIPAL CORPORATIONS — LOCAL IMPROVEMENTS — BONDS — PAYMENT—STATUTES. Where local improvement bonds were issued under ordinances and the law of 1899, p. 238, § 9, providing that each bond should be payable only out of the local improvement fund and that there should be no claim thereon against the city, except by enforcement of the special assessment, the city council had no power to provide for their payment, in case of a deficit, by the creation of a local improvement district surplus fund, made up from the surplus moneys in the funds of improvement districts, the bonds to be assigned to the city, nor in any other way than as limited by law to the special assessments against the property.

SAME. A local improvement district surplus fund, for the payment of deficits in local improvement funds, which is "subject to disposition by the city as it shall see fit" is absolutely within the city's discretion, which, in the absence of fraud or arbitrary mismanagement, cannot be controlled by mandate in the interest of bondholders seeking to have the same applied to the payment of their bonds.

[1]Reported in 166 Pac. 66.

SAME—REPRESENTATION—STATEMENTS BY OFFICERS.  A city treasurer and councilman has no power to bind the city by a statement or representation to a purchaser of local improvement bonds, buying the same from a contractor, which would set aside the provisions of the law or ordinances or enlarge the liability of the city.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered December 11, 1916, upon sustaining a demurrer to the application, dismissing an action for a writ of mandamus.  Affirmed.

*Hayden, Langhorne & Metzger,* for appellant.

*U. E. Harmon* and *Frank M. Carnahan,* for respondents.

HOLCOMB, J.—Upon sustaining a demurrer to the application of the relator for a writ of mandate directed to the city of Tacoma and certain of its officers, the court dismissed the action, and the relator appeals.

The facts, as set forth in the application for the writ, together with an amending stipulation, are in substance as follows:  On October 6, 1909, the city of Tacoma initiated local improvement district No. 693, having for its object the improvement by planking and guttering the road in an outlying section of the city.  The improvement district was regularly created and the improvement duly completed and accepted.  In part payment of the contract price, the city caused to be issued and delivered to the contractor sixty-four bonds of the local improvement district, aggregating $6,312.30.  These bonds were issued pursuant to city ordinances Nos. 1,388, 3,923, and 4,154.  These bonds, by their terms, matured August 9, 1915, at which time there remained outstanding and unpaid bonds Nos. 27 to 64 inclusive, which are now, and were at the time of the institution of this action, in the possession of the relator.  There is not now, and has not been since the maturity of these bonds, any moneys in the fund of local improvement district No. 693 to be applied to the payment of the bonds, or any of them.  Previous to the initiation of this improvement, the city council of Tacoma

had enacted ordinance No. 3,377, which remains unamended and unrepealed by any express ordinance referring and relating thereto. This ordinance is entitled, "An ordinance creating a fund to be known as Local Improvement District Surplus Fund," and authorizing the disposition of such moneys, and after defining what shall constitute the fund, and providing for its immediate endowment by the transfer to it of the surplus moneys remaining in the funds of the several improvement districts which at that time had been paid out in full, contains the following:

"Section 3. That no moneys shall be taken or used from said local improvement district surplus fund except under the following conditions: (a) When the date has expired for the final call of bonds in any local improvement district of the city of Tacoma, and there remains outstanding any bond or bonds against said local improvement district on account of an insufficient amount of money in the local improvement district fund, then the city treasurer shall transfer from the local improvement district surplus fund to such local improvement district fund such an amount as shall be needed to call and retire such bond or bonds. Said bond or bonds, however; upon the redemption as above provided, shall be assigned to the city of Tacoma and retained by it and become its property, and shall not be cancelled or cease to be a lien upon property in the local improvement district, subject to assessment until all the assessments made in such district have been paid either directly or through foreclosure proceedings on behalf of said city."

When the bonds issued in local improvement district No. 693 were delivered to the contractor, he went to the relator, accompanied by Ray Freeland, then one of the city councilmen and city treasurer. To induce the bank to buy the bonds, Freeland represented to it that the local improvement district surplus fund, created by ordinance No. 3,377, provided a guaranty for the payment of the bonds in the event that the special assessments levied to retire the bonds should fail to provide enough funds for that purpose, and that the fund

was created for the express purpose of making certain the ultimate payment of local improvement district bonds, and particularly of those issued in outlying improvement districts, and that the fund had been used, and was then being and would be used, to pay bonds of improvement districts which remained outstanding after the date fixed for their final call, in cases where there were insufficient funds in the local improvement district fund out of which such bonds should have been paid in the first instance. Relying upon these representations and upon the existence of the local improvement district surplus fund, the bank purchased the bonds. They reached maturity, and the last thirty-eight remained unpaid. At that time there were outstanding previously matured bonds of but two other local improvement districts, to wit: Nos. 704 and 542, in which districts the total outstanding bonds amounted to $5,200. In the meantime, by ordinance No. 5,192, passed January 15, 1913, the city had transferred $10,000 from the local improvement district surplus fund to the general fund. That ordinance is also set out in full. At this time, and, in fact, during all of the times referred to, there was and still remains in force ordinance No. 3,201, set out in full, which in brief provides that, whenever any money is, by ordinance, transferred from one fund of the city to any other fund of the city, such sums so transferred shall be, by the proper officers, transferred back to the original fund whenever there is a sufficient amount in the fund transferred to pay back the amount so transferred. When these bonds reached maturity and were unpaid, the relator demanded of the city that it take over the bonds, using the moneys of local improvement district surplus fund, and if there were insufficient moneys in that fund, then that it retransfer from the general fund all or a sufficient part of the $10,000 transferred by ordinance No. 5,192 to the general fund to pay the bonds and accrued interest. The demand was refused and this action resulted.

The contention of the appellant is that ordinance No. 3,377, creating a fund to be known as Local Improvement District Surplus Fund, created a rotating fund out of which the bonds of the several local improvement districts within the city might be cared for without incurring any general liability upon the part of the city, and without subjecting the individual bondholders to the expense and trouble of maintaining an action of foreclosure upon the particular property within the district which had suffered default in the payment of the assessment levied against it; that it provided in effect that, so long as there should remain after the discharge of all obligations, bonds or otherwise, surplus moneys arising from the excess penalty and interest of other local improvement districts, the city would use them for the purchase of defaulted bonds of other districts, and would itself undertake the collection of such bonds in the manner prescribed by law and relieve the individual bondholders of this burden; that at the most it contemplated a temporary transfer from the local improvement district surplus fund to the special improvement district fund with what the council considered an assured income.

It is also asserted that this levy was intended primarily for the benefit of owners of land within a prospective local improvement district, because, by the assurance which it got that the bonds of that district would be paid promptly at or before maturity, the discount commonly figured in all contractors' bids could be for all practical purposes eliminated, thereby reducing the cost of the improvement; and secondarily, for the benefit of the city at large by establishing and maintaining the city's credit and good will and by reducing the cost of all similar improvements in the city. It is further urged that appellant expressly relied on the offer contained in this ordinance and paid the contractor for his bonds; and when their maturity was reached and the city had failed to collect the several assessments provided therefor, leaving thirty-eight bonds unpaid, that it had a right to ten-

der said bonds to the city with the expectation that the city would avail itself of the remedies provided by it and pay the moneys due thereon to the appellant.

Appellant desires it to be especially noted, first, that it does not sue on the bonds which it holds, or seek to establish any liability therefor on the part of the city on the ground that they evidence an indebtedness of the city; and second, that this case does not call for a balance of the equities between the general city taxpayer on the one hand and the relator on the other, as was called for in *German-American Sav. Bank v. Spokane,* 17 Wash. 315, 49 Pac. 542, 38 L. R. A. 259, and that this case is to be distinguished from that; that the relator here seeks only those moneys to which the city and the general taxpayer have no moral right and which, if awarded to the relator, will not be raised by general or special taxation.

The ordinance (No. 3,923) creating local improvement district No. 693, contained the following provision:

"Out of said fund shall be paid the bonds, interest thereon and the entire cost of said improvement, and no part of such fund shall become the property of the city of Tacoma but shall be treated as a special trust fund for the purpose herein indicated."

Another provision therein was as follows:

"In calling for bids the commissioner of public works shall state that the contractor doing the work shall agree to accept at par the bonds issued in pursuance of this ordinance in payment of the same, and shall have no claim whatever on account thereof against the city of Tacoma except solely upon said bonds, the special assessment made and the fund hereby created."

This ordinance and another general ordinance, enacted by the city of Tacoma and referred to as ordinance No. 1,388, relating to the method of providing for special improvement district assessments, were enacted in strict conformity to the laws of the state relating thereto, particularly the acts of

1899, Laws 1899, pages 334 and 234, which laws provided that each bond issued under the provisions of such acts should provide that the principal sum therein named and the interest thereon should be payable out of the local improvement fund created for the payment of the cost and expense of such improvement, and not otherwise. And another section provided that neither the holder nor owner of any bond issued under the authority of the act should have any claim therefor against the city by which the same was issued except from the special assessment made for the improvement for which such bond was issued, but his remedy in case of nonpayment should be confined to the enforcement of such assessments; and a copy of this section should be plainly written, printed, or engraved on each bond so issued. Laws 1899, p. 238, § 9. The legislature passed a further act in 1901, Laws 1901, p. 240, § 10, relating to special assessments and the collection thereof and containing similar inhibitions. The bonds here in question contained a copy of § 9 of the act of 1899, which was copied and followed in the ordinance, No. 1,388, providing for special assessments in local improvement districts. The provisions thereof were, therefore, both impliedly and expressly written into and were part and parcel of the contract evidenced by the bonds.

As a first and fundamental proposition, it must be again asserted that, in this state, municipalities have no power except such as is expressly delegated by the state. When that power is enlarged or when it is diminished, the power of the municipality exists and dates therefrom. *State ex rel. McMannis v. Superior Court*, 92 Wash. 360, 159 Pac. 383. The special fund bonds for the improvement under the special improvement assessment were not obligations against the city. *Soule v. Ocosta*, 49 Wash. 518, 95 Pac. 1083. 2 Page and Jones, Taxation by Assessment, §§ 1505, 1506. The city had no power to provide for the payment of the obligations of the improvement district or the bonds to pay the obligations thereof except in the manner provided by law, and the law

limited the payment to the assessments against the property. These improvement districts are special creatures of the law and each of them must stand by itself. The only way in which a deficiency can be provided for in any one district is by another assessment in each case. The debit in one fund cannot be offset by a credit in another fund. *Thayer v. Grand Rapids*, 82 Mich. 298, 46 N. W. 228. The relator stands in the shoes of the contractor for whose benefit the bonds were issued, and has only the same rights he would have had. Hamilton, Special Assessments, § 720.

The relator has no right or interest, so far as shown, in following any of the funds proposed to be turned into the fund created and to be known as local improvement district surplus fund, and has no right to compel their disposition in any manner. The situation here is in no wise similar to that governed by *Chehalis v. Robinson*, 87 Wash. 690, 152 Pac. 696, cited by appellant. That was a case of the property owners and payers of the sums into a special assessment fund, who had paid in excess of the amount that could lawfully be collected, following the funds they had paid in and collecting the excess back.

And if it be conceded, as argued by appellant, that the surplus remaining in any local improvement district fund after payment of the obligations outstanding against the same is money "subject to disposition by the city as it shall see fit," it does not avail appellant. If the funds are subject to disposition as it shall see fit, the city's discretion therein is absolute, in the absence of fraud or arbitrary mismanagement, and the relator cannot, by mandate, compel the disposition thereof by the city. The relator does not contend that there is any surplus fund remaining in local improvement district No. 693. On the contrary, it contends that there was a deficit. If there are any surplus funds arising from other local improvement districts they may belong to the persons interested in those districts, and, in fact, a subsequent state law (Laws 1909, p. 387), providing for the repayment of such bonds to

the payers-in thereof would seem possibly to have impliedly repealed the ordinance of 1908 establishing the local improvement district surplus fund of Tacoma, or to amend that ordinance by implication, so that the only power of application of the funds deposited therein shall be to repay the payers-in of funds of local improvement districts where a surplus arose.

Neither has appellant any right to rely upon any assurances or representations made by Freeland, the city treasurer and councilman, to it at the time the bonds were assigned to it. Freeland was but one city councilman, and was also city treasurer, and had powers and duties to perform in each capacity. He could not transcend his duties as city treasurer and make guaranties on behalf of the city which were beyond his powers and duties. He could not set aside the provisions of the law of the state or of the ordinances based thereon. Nor did any one have a right to rely upon representations which did in effect so do. As the city councilman he also had certain powers and duties, but as such he could not bind the city beyond its corporate powers nor add to the terms of any contract it had made, in any such informal and single-handed manner as is here relied upon. *Dickerson v. Spokane*, 35 Wash. 414, 77 Pac. 730. Neither Freeland, as one councilman, nor the city council itself had authority to pass an ordinance contrary to the provisions of § 9 of the act of 1899, which provided that the remedy of the bondholder in case of nonpayment should be confined to the enforcement of the assessments.

For these reasons, the judgment is affirmed.

Ellis, C. J., Fullerton, Parker, and Mount, JJ., concur.