## Edgewood Borough v. Apfel

*Wright & Rundle*, for plaintiff.

*Thos. M. Benner* and *Abraham Gratz*, for defendant.

SOFFEL, J., March 7, 1938—The Borough of Edgewood brought suit against Frank Apfel and the Leader Service Stations, Inc., charging them with violation of the zoning ordinance of the borough, particularly article III, sec. 5, subsecs. 8 and 13. A hearing was duly had before the burgess. Defendants were found guilty and were fined in accord with the provisions of said ordinance. An appeal was taken to the county court.

The facts may be summarized as follows: The Leader Service Stations, Inc., is a corporation which owns and operates two gasoline service stations in the Borough of Edgewood—one located at the corner of Braddock and Swissvale Avenues, and the other on Edgewood Avenue. Defendant Frank Apfel is vice-president of the corporation and manager of the service stations. Some time prior to 1937, the Leader Service Stations, Inc., began to operate the service station located at the corner of Braddock and Swissvale Avenues. In 1937, through Frank Apfel, said corporation applied for a permit for another gasoline service station to be located on Edgewood Avenue, adjoining a railroad siding. Said permit was duly granted and the service station erected. Two 10,000 gallon tanks were installed—these having been indicated on the plans submitted with the application for permit. Tanks of this size are capable of holding the contents of a tank car of gasoline as shipped by the railroad on to the siding. With its own truck defendant corporation hauled gasoline from the service station on Edgewood Avenue to its other station located on Braddock Avenue, for the purpose of sale to retail customers.

Ordinance no. 412, the zoning ordinance of the Borough of Edgewood, approved April 6, 1926, and recorded in ordinance book vol. 3, pp. 267, 279, with its amendments, provides inter alia, as follows:

"Article III—Use District Classifications and Regulations Commercial District.

"Section 5—In this district the land may be used and buildings or structures may be erected, altered, reconstructed or used for any purpose except the following:

"Prohibited Uses:

"8. Gasoline, oil or petroleum products storage in excess of amount necessary for use on the premises or for supplying retail trade at service stations."

Defendants were charged with violation of the section and subsection of the zoning ordinance cited supra. The Borough of Edgewood contends that the storage of gaso-

line by defendants at the station on Edgewood Avenue, in excess of the amount needed for use in supplying retail trade at said station is in violation of the sections of the zoning ordinance, and that the transportation of gasoline from the Edgewood Avenue station to defendant's other station on Braddock Avenue for the use of retail trade at said Braddock Avenue station amounts to the operation of the Edgewood Avenue station in a wholesale manner.

There is no denial of the facts as alleged in the information and as stated here. They are admitted by both sides. Defendants appealed from the conviction and fine imposed, on two grounds:

1. That the use complained of, to wit, the storage of gasoline on the premises for supplying gasoline not only to the station on premises but to another station in Edgewood did not violate the zoning ordinance.

2. That even if such use violated the zoning ordinance, the borough would be estopped from complaining because a permit for the station had been granted after defendants had indicated that they might or would deliver a portion of the gasoline stored in the tanks on the Edgewood station to the station at the corner of Swissvale and Braddock Avenues.

The dominant question thus becomes: Does the use complained of violate the zoning ordinance of the Borough of Edgewood? In order to determine this question it is essential to review the history of the issuance of the permit to defendants for construction of its service station on Edgewood Avenue. The evidence as adduced at the trial establishes these facts: Prior to the issuance of the permit to construct the service station on Edgewood Avenue, application was duly made to the borough manager for the issuance of a permit allowing the construction of said station at a cost of $4,000. Blueprints were submitted showing the plans of the proposed buildings, including the two 10,000 gallon tanks. The minutes of council show that at a meeting held April 12, 1937, which was the day prior to the issuance of the permit, the matter

was considered by council and the following minute was passed:

"Leader Service Station, to construct gasoline station on Keller Brother property, Edgewood Avenue; plans include 2—10000 gal. tanks underground for delivery of gas in carload lots; applicant has State permit, approval of interstate commerce commission for railroad, and consent of property owners within 80 feet. Manager reports he has made inquiry from Fire Marshal Pfarr, Gulf and Atlantic companies regarding danger from these tanks, and all reports are that tanks constructed in accordance with State requirements are safe. It is possible that applicant may deliver gas from this station to his station on Braddock Avenue. This matter called to attention of council for advice by the manager. It seemed to be the sense of council that the permit be granted. Solicitor Rundle advised applicant that the permit would be for a gasoline service station at this location in accordance with the ordinance."

Pursuant to the authorization of council, the borough manager issued the permit and the station was constructed at a cost of approximately $4,500.

Mr. Apfel testified that when he made application for the permit, he told Mr. Garrett, the borough manager, he intended to transport gasoline from the Edgewood station to the company's other station on Braddock Avenue. This was not denied by Mr. Garrett. Mr. Garrett, as borough manager, issues permits. From the minutes of the session of council where the issuance of this particular permit was debated, it is apparent that it was brought to the attention and notice of council that defendant desired to transport gasoline from the proposed new station to his other station. On the strength of the permit, defendant corporation invested approximately $4,500 in the erection of the buildings of its station, and also entered into a contract with the Standard Oil Company of Pennsylvania, obligating defendant to purchase not less than 300,000 gallons of gasoline for the year, at an approximate cost of

$40,000. Defendant also entered into a ten year lease for the premises, at a total rental of $6,000.

We come now to a consideration of the language of the ordinance. Article III provides for the classification of districts. The particular district with which we are concerned is a commercial district. The land in such district may be used for buildings or structures for any purpose except as prohibited. The prohibitions include such uses as manufacturing, stockyards, garbage or refuse reduction, blast furnaces, coke ovens, milling, junk, storage warehouses, etc. Included among the prohibitions is the storage of gasoline, oil or petroleum products in excess of amount necessary for use on the premises or for supplying retail trade at service stations.

An analysis of this subsection indicates that the storage of gasoline in a commercial district is prohibited, except such amount as is necessary for two things: (1) For use on the premises; and (2) for supplying retail trade at service stations.

The first exception, for use on premises, would apply to that type of commercial business that was engaged in dyeing or cleaning and undoubtedly it means the storage of gasoline on the premises for use in the conduct of such business. The second exception permits the storage of gasoline in such amounts as may be necessary to supply retail trade at service stations.

It is argued by counsel for defendant that the use of the word "stations" in the plural permits the storage of gasoline at a given station for use not only at that particular station, but another station that may be owned by the same dealer, provided the gasoline is used to supply retail trade. We believe that such construction of language is possible. If the Borough of Edgewood had intended to prohibit storage of gasoline at a service station to the amount necessary for supplying the retail trade at that particular station it could thus have stated the fact in clear unambiguous language capable of but one interpretation. It is true that in the instant case defendant

stored at the Edgewood Avenue service station gasoline sufficient to supply the retail trade not only at said station, but also at its other station on Braddock Avenue. It is argued by counsel for plaintiff that in so doing defendants were in reality acting as wholesalers. With that contention we cannot agree. Defendants acquired the gasoline originally at wholesale prices, no doubt; but in selling the gasoline at the service stations it was sold exclusively to retail trade. There is no evidence of any kind to establish sales by defendants that technically and in their essence can be construed as wholesale.

We believe the language in question is susceptible of the construction urged by defendants. In 43 C. J. 572, §913, under the title "Municipal Corporations", the following statement of law relative to the construction of ambiguous or doubtful ordinances is made:

"Contemporaneous construction of ordinances and resolutions, the meaning of which is ambiguous or doubtful, may be considered by the court in determining their meaning and intent; and this is especially true where there has been a long acquiescence in such construction. However, it has been said that, in passing upon the validity of an ordinance, the court is to be controlled by what acts may be done under its authority and not by what has been done under it. And if the ordinance or resolution is not ambiguous or of a doubtful meaning contemporaneous construction is entitled to no weight in the construction thereof."

Defendants also contend that the Borough of Edgewood is estopped from prosecuting defendants for violation of the given ordinance. There is no doubt that the permit in question was granted with full knowledge on the part of the borough officials that defendants who already maintained one station in the borough, intended, if the permit issued for the erection of the new station, to transport gasoline from it to the original station. We must bear in mind that a railroad siding ran into the Edgewood Ave-

nue station. The blueprints showed the proposed installation of two 10,000 gallon tanks. Mr. Apfel, acting for defendants, disclosed fully and completely the proposed use in the matter of transportation from the Edgewood station to the original one on Braddock Avenue—both to the borough manager and later before council. It is true that the borough solicitor was present when the matter was considered by council. It is also true that he pointed out to Mr. Apfel that it might be advisable for him to consult his attorney because any use of the premises contrary to the provisions of the zoning ordinance would subject him to arrest. We believe that at the hearing before council justice required a definite statement on the part of the borough officials in plain, unequivocal, unambiguous language that defendant company could have a permit to erect the proposed service station but that the transportation of gasoline from that station to its other established station in the borough came within prohibited uses of the zoning ordinance and would not be tolerated. The minute of council speaks strongly against those entrusted with the administration of the affairs of the borough. Note this language: "It is possible that applicant may deliver gas from this station to his station on Braddock Avenue. This matter called to attention of council for advice by the manager. It seemed to be the sense of council that the permit be granted." We certainly believe that Mr. Apfel could well believe that the issuance of the permit carried with it the right to transport gasoline to his company's other station.

We would have no hesitation in holding, under the facts, that the Borough of Edgewood should be estopped. We believe that ordinary justice requires such interpretation from the acts of the borough officials. We are, however, confronted with a principle of law which prevents the application of the doctrine of estoppel to the acts of the borough officials, even in such a case as this. Counsel for the borough ably argues that council in its legislative capacity passes the ordinances of the borough which have

the effect of laws. The enforcement of these ordinances is entrusted to the burgess. Council by its officers cannot alter the ordinances of the borough once adopted. The only manner in which an ordinance of the borough can be changed is by another ordinance passed with the same formalities or by State law. A mere councilman, by admissions or acts on his own part, cannot estop the borough in its governmental capacity from enforcing an existing ordinance. The principle of law which counsel for plaintiff argues is applicable to the instant case may thus be formally stated:

"On the other hand it is settled that the public, whether exercising its functions through a state or the federal government, or through a municipal corporation, county, town, township, or other governmental agency or instrumentality, cannot be estopped by unauthorized, illegal, or fraudulent acts, admissions, conduct, or statements on the part of their officers and agents, even though benefits to the public have accrued and been accepted; nor can there be an estoppel by such acts or conduct where the subject matter is ultra vires or the contract wholly illegal": 21 C. J., 1191.

"The principle is well established that a public or governmental corporation like a municipal corporation is not estopped by the acts of its officers when they exceed their powers. The rule is that persons dealing with such officers must, at their peril, ascertain the scope of their authority. The doctrine that principals are estopped to deny the authority of their agents acting within the scope of their power usually does not apply to public officers": 2 McQuillin on Municipal Corporations 192 (2nd ed.), sec. 519.

That a municipality may be estopped by the acts of its officers if done within the scope and in the course of their authority or employment is well established. But estoppel does not arise if the act is in violation of the law: Lipsitz v. Parr et al., 164 Md. 222, 164 Atl. 743, February 15, 1933, Parke, J. (pp. 745-46).

"That matter, therefore, is resolved down to the question whether the board of trustees [board of trustees of Redwood City] by granting a permit to erect the second building, knowing at the time it was to be used as a hardware store, which use was contrary to the terms of the ordinance, thereby placed themselves in a position that prevented them from thereafter enforcing the terms of the ordinance which prohibited a lumber-yard from being operated within the residence district. Appellant contends that they have. He cites no authority to support his contention, and we are not seriously impressed with it. We know of no power possessed by a board of trustees that will permit it in any such manner to nullify a legal ordinance adopted by the municipality. An ordinance of a municipality when once legally adopted becomes binding upon all the citizens thereof, officers as well as private citizens, and it is the sworn duty of those officers, charged with its enforcement, to prosecute all violations thereof. This duty is not a personal duty that can be waived at their will, nor can they be estopped by any action of theirs from the faithful performance of the same. There is no merit in this contention of appellant": Magruder v. City of Redwood et al., 203 Cal. 665, 674, 265 Pac. 806, (March 26, 1928, Curtis, J.).

Of like effect are the decisions in the following cases: State of Washington ex rel v. The City of Tacoma et al., 97 Wash. 190, 166 Pac. 66, Holcomb, J., page 69. Newberry v. Fox, 37 Minn. 141, 5 Am. St. Rep. 830, (Dickinson, J.).

In the absence of any Pennsylvania case directly in point, we therefore conclude that the doctrine of estoppel cannot be invoked in the instant case against the Borough of Edgewood. We also conclude, under our interpretation of section 5, subsec. 8, art. III, of the ordinance that there has been no usage of the premises contrary to the terms of the ordinance. Judgment is therefore entered for defendants.