[No. 6237. Decided September 26, 1906.]

THE STATE OF WASHINGTON, *on the Relation of Security Savings Society, Appellant*, v. G. L. Moss, *as Treasurer of the Town of Medical Lake, Respondent.*[1]

MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENT DISTRICTS. Under Laws 1888, p. 16, a municipality of less than six thousand inhabitants has no power to create a special assessment district.

SAME—SPECIAL ASSESSMENT DISTRICTS. The general incorporation act of 1888 (Laws 1888, p. 224, § 23) empowers municipalities to create special assessment districts; and a contract by a city for a local improvement, agreeing to pay for the work as fast as the city collects and receives the special assessments, does not create a liability against the city.

SAME — LIABILITY WHERE SPECIAL · ASSESSMENT INSUFFICIENT. Where a municipality, organized under the void act of 1888, contracted for street improvements payable with warrants on a special assessment fund was, after the completion of the work, reorganized under the act of 1890, and thereafter ratified the indebtedness for the street improvements aforesaid and declared it to be a town debt, warrants drawn on the general fund after the exhaustion of the spe-

[1]Reported in 86 Pac. 1129.

cial fund, in exchange for special assessment warrants, are without consideration and void; since the assessment district and not the city was liable therefor.

SAME—INDEBTEDNESS OF SPECIAL ASSESSMENT DISTRICT—RATIFICA-TION. The balance due a contractor upon the indebtedness of a special assessment district for a local improvement, after the assessment is exhausted, is not such a moral obligation of the town as can be ratified and made a legal debt of the town.

SAME—GENERAL FUND WARRANTS—CONSIDERATION. Warrants on the general fund issued in exchange for special assessment warrants after the completion of improvements are without consideration where the city was not liable for the special warrants.

Appeal from a judgment of the superior court for Spokane county, Carey, J., entered September 16, 1905, in favor of the defendant after a hearing on the merits, denying an application for a writ of mandamus to compel a city treasurer to pay warrants. Affirmed.

*Wm. E. Richardson* and *P. C. Shine*, for appellant.

*Post, Avery & Higgins*, for respondent.

HADLEY, J.—This action was brought to procure a writ of mandate to compel the treasurer of the town of Medical Lake to pay certain general fund warrants issued by said town. The treasurer declines to pay them, on the ground that they do not represent a valid indebtedness against the town. The judgment was against the relator, the holder of the warrants, and it has appealed.

The town of Medical Lake was incorporated under the act of 1888, which act was thereafter declared void by this court. The town reincorporated under the act of 1890, and the reincorporation became effective June 12, 1890. It has been a municipal corporation of the fourth class under the laws of this state since the last named date. On the 17th day of May, 1889, the officers of the then void corporation entered into a contract with one Peter Lund, of the following import: In consideration of the sum of $8,645 said Lund agreed to improve Broad street in said town according to

plans and specifications then on file.   The town undertook to
pay for the work upon the completion of the contract, and
agreed in the contract to proceed at once to levy a special
assessment upon the property fronting upon the street to be
improved, for the purpose of paying the contract amount.
It was also agreed that the town should collect and pay over
to the contractor the amount of such assessments without
delay and in the shortest time possible under its charter and
ordinances.   It was further agreed that, if payment should
become due and if the town should not have received suffi-
cient money from such special assessments to make the pay-
ment, it should issue to the contractor its warrants for the
amount of the deficiency, payable to him or his order "out
of said fund."   The contract also contained the following:

"And the said town of Medical Lake further agrees that,
in case such warrants are issued and accepted by said Peter
Lund, it will redeem and pay them before due, if presented,
as fast as and whenever it collects and receives the money
from such special assessments."

The work was completed, warrants were issued, and about
$5,000 of the amount was collected and paid over.   The re-
maining warrants were unpaid and were outstanding and un-
redeemed at the time of the reincorporation.

After the reincorporation and on the 18th day of Novem-
ber, 1890, the council of the newly incorporated town passed
an ordinance designated as No. 20 and entitled "An ordi-
nance to ratify and confirm certain indebtedness of the town
of Medical Lake."   Section 1 of the ordinance contained the
following:

"The following indebtedness heretofore incurred by the
town of Medical Lake as heretofore incorporated  .  .  .
is hereby confirmed, ratified, recognized, and declared to be
indebtedness of the town of Medical Lake as now organized."

Among other warrants mentioned in the section as repre-
senting indebtedness which was ratified, a number of the war-
rants issued for the Broad street improvement were speci-

fied, the aggregate face amount of which was $2,537.10.
Thereafter, on the 7th day of July, 1896, the council passed
an ordinance known as Ordinance No. 67, and which was
entitled as follows: "An ordinance providing for the chang-
ing of certain street grade warrants for general fund war-
rants." After a preamble, § 1 of the ordinance is as follows:

"That the mayor and town clerk be and are hereby au-
thorized on the presentation to them of any grade fund war-
rants on either LeFevre or Broad street, to cancel the same
and issue in lieu thereof warrants for the same amount and
bearing the same date upon the general fund of the town of
Medical Lake."

In pursuance of said ordinance above mentioned, unredeemed
Broad street grade fund warrants were surrendered and in
lieu thereof general fund warrants bearing the same date as
the original grade fund warrants were issued. Appellant
seeks by this action to compel payment of the last named
warrants.

Appellant contends that the contract for the improvement
of Broad street created a general liability against the town,
and not merely a liability against a particular district. It
concedes that the contract provided for the creation of an
assessment district and for a special assessment upon the
property contained in the district, and that both parties to
the contract proceeded upon the theory that the town had
the same authority to create a special assessment district and
to levy a special assessment as was conferred upon towns and
villages by the act of the territorial legislature concerning
special assessments, approved February 2, 1888, Laws 1888,
page 16. It is pointed out, however, that the power did not
exist under that act for the reason that it was limited in its
operation to municipalities having a population of six thou-
sand or more, and that the town of Medical Lake was not
such a municipality. With the above-mentioned statute elim-
inated for the reason stated, appellant argues that the gen-
eral incorporation act of 1888 also failed to attempt to con-

fer the power to create special assessment districts.   Section
23 of that act, Laws 1888, page 224, refers to the powers
concerning streets, and is as follows:

"To have streets and alleys opened, graded and repaired
and the footways and sidewalks paved or planked at the ex-
pense of the occupants of the adjacent lots, or if any such
owner or occupant fails to open, repair or pave or plank
the same as required by ordinance, such board of trustees
may cause the same to be done and may recover the full ex-
pense thereof, and the costs of the proceedings to obtain
such recovery from such owner or occupant by action in the
name of the corporation before any court of competent jur-
isdiction, and if any tenant be required to open, grade, repair
or plank in front of the property occupied by him, the ex-
pense thereof is a good set-off against so much rent due the
owner; but no tenant can be required to expend more than
the rent due, and such charges are a lien upon the property
and may be enforced and collected as other liens."

The first part of the above section was clearly intended to
confer the power to improve streets at the expense of adjacent
property, and that power by necessary inference included the
further power to arrange a scheme for assessment districts in
order to carry the expressed power into effect.   Appellant
argues, however, that the power was not intended to be in-
cluded in the statute; that that part of the Broad street con-
tract which provided for issuing special fund warrants in
payment of the contract price was unauthorized by the terms
of the statute; and that the legal effect of the contract must
therefore have been that the town agreed generally to pay
for the work and to assume the burden of recovering the ex-
penditure from the property owners.   The inference is there-
fore drawn that there was a general promise to pay on the
part of the town, made before its legal existence, and that
such promise was ratified and became enforcible against the
taxpayers after the legal incorporation.   We have said we
think the statute should be construed as having been intended
to include the power to make special assessments.   Then, in

the light of the terms of the statute and in view of the contract and what was done by the contractor and the people within the territory that afterwards became the town of Medical Lake, what did they intend and undertake to do? An ordinance was passed for the grading of Broad street. It created an assessment district for the purpose of paying the expenses, and provided for bids and for letting the contract to do the work. Bids were made in pursuance of the ordinance, the contract was let in terms as above stated, warrants were issued on a special fund for the grading of Broad street, and the property holders paid the larger part of the assessments. These facts, we think, establish beyond controversy that the intention of all parties was merely to rely upon special assessments, and that, even if the town of Medical Lake had been a valid corporation at that time, there would have been no general liability against the town which would have compelled the issuance of general fund warrants under the decisions of this court. *German American Sav. Bank v. Spokane*, 17 Wash. 315, 49 Pac. 542, 38 L. R. A. 259; *Wilson v. Aberdeen*, 19 Wash. 89, 52 Pac. 524; *Rhode Island Mtg. etc. Co. v. Spokane*, 19 Wash. 616, 53 Pac. 1104; *Potter v. Whatcom*, 25 Wash. 207, 65 Pac. 197.

Appellant insists that, notwithstanding the above decisions, this case must fall within the decision of *Abernethy v. Medical Lake*, 9 Wash. 112, 37 Pac. 306. If there exists any conflict in principle between that decision and those above cited, it should be said that the cases first cited are the later decisions of this court. There is, however, an important distinction between the case at bar and *Abernethy v. Medical Lake*. In that case a street contract had been let by the void corporation, and the work had not been completed when the valid corporation came into existence. It was proposed to the bondsmen of the contractor who held the incompleted contract, that if they would finish the work the town would "ratify the indebtedness incurred upon said street." A con-

tract of that kind was entered into between the bondsmen
and the valid corporation, and the work was completed.   An
ordinance was then passed declaring a certain sum to be the
indebtedness of the town, but the warrants issued were lim-
ited to "LeFevre street grade fund."   There was no such
fund, and the treasurer refused payment for want of funds.
The consideration for the new contract and for ·doing the
incompleted work was that·the town should undertake to pay.
There was then a corporation capable of contracting, and
it received something of value from the contractors which
it did not before possess, viz., a completed and improved
street which was before incomplete and unprepared for pub-
lic travel.   It was held that the town was liable and should
pay from its general fund.   In the case at bar, however, the
street work was completed before the valid corporation came
into existence.   No new contract was made, no work was
done, and the corporation received nothing that did not ex-
ist when it was· created.   *Abernethy v. Medical Lake* does
not appear to have been decided on the theory which is urged
in the case at bar, viz., that a promise existed before the
legal existence of the town, but upon the ground that the
town made a contract after its creation and, having received
something of value therefrom, it by ordinance declared the
debt to be its own.   We therefore think that case must be
distinguished from this one.

Appellant concedes that the contract under which the street
work was done was invalid for the reason that the municipal
corporation, which was a party to it, was illegally organized
and could not make a contract, but it is argued that the cor-
poration could ratify the contract after it was legally created,
provided there was sufficient consideration for such ratifica-
tion.   *State ex rel. Traders Nat. Bank v. Winter*, 15 Wash.
407, 46 Pac. 644, is cited as authority for this contention.
The indebtedness involved in that case was of a general nature,
incurred by the void corporation of the town of Colville.

After it became legally incorporated, the town by ordinance ratified the indebtedness and assumed its payment. This court held that, in view of the moral obligation and of two legislative acts found respectively in Laws of 1891, page 279, and Laws of 1893, page 183, the validation was effective. We have said that the indebtedness ratified was of a general character such as is enforcible by general taxation against valid municipalities, and the statutes mentioned relate to the validation of such general obligations. It was not held that a special indebtedness for street improvements incurred by a void municipality and which could not have been a liability against general taxpayers even if the municipality had had a legal existence could, after the legal creation of the corporation, be so ratified by the corporation as to convert the liability from that of a special indebtedness to a general one enforcible against all the taxpayers. Such a view we think is not maintainable by sound reasoning, and it has not been so held by this court. Avoiding the force of this, appellant, as we have seen, contends that the obligation was originally a general one of moral force against all the taxpayers, and that ordinance No. 20 of the valid municipality above mentioned was an effective ratification. Within our view as above expressed, it was, however, never intended that the indebtedness should be paid by the general taxpayers, and they were never parties to any moral agreement to pay it. We think it is manifest that it was intended, both by the contractor and the acting trustees for the taxpayers, that the abutting property owners alone should pay this indebtedness. Ordinance No. 67 merely authorized an exchange of the grade fund warrants for others on the general fund. There was no consideration for the general fund warrants except the indebtedness represented by the grade warrants, and since the latter could not be made a charge against the general taxpayer, it follows that payment of the warrants in question cannot be so enforced.

Other questions involving the constitutional limit of in-

debtedness and *res adjudicata* are argued, but inasmuch as the court made no findings upon those subjects, and as they are not necessary to a determination of the case, we shall not discuss them.

The judgment is affirmed.

MOUNT, C. J., FULLERTON, ROOT, CROW, and DUNBAR, JJ., concur.