[No. 6481. Decided October 26, 1906.]

The State of Washington, *on the Relation of Martin D. Barnes, Appellant,* v. The City of Blaine et al., *Respondents.*[1]

Municipal Corporations—Debt Created Under Illegal Incorporation—Warrants on Special Improvement Fund—Ratification—Issuance of Funding Bonds. Warrants drawn on a special improvement fund by a void municipality cannot, upon its subsequent valid incorporation, be ratified by the issuance of funding bonds to pay such indebtedness, thereby changing a special assessment liability to one of general character; since the assessment district, and not the city, was liable therefor.

Appeal from a judgment of the superior court for Whatcom county, Neterer, J., entered July 18, 1906, upon overruling a demurrer to the defendants' answer, dismissing an application for a mandamus to compel a city to levy taxes for the payment of bonds. Affirmed.

*Newman & Howard,* for appellant.

*G. H. Westcott,* for respondents.

[1]Reported in 87 Pac. 124.

Root, J.—Relator instituted this proceeding to compel the city of Blaine and its officers to require the levy of taxes sufficient to pay certain interest coupons, aggregating in amount $6,150, and to thereafter each year levy upon the taxable property of said city, in addition to the tax for other purposes, a sufficient sum to pay interest on each of certain bonds described in relator's affidavit, and to provide a sinking fund sufficient to pay the bonds at maturity. Respondents answered, admitting most of the allegations in relator's amended affidavit, and setting up a separate affirmative defense, to which relator demurred. The court overruled the demurrer, and relator declining to amend or plead further, the court dismissed the proceeding. From the order overruling the demurrer and dismissing the action, relator has appealed to this court.

In May, 1890, the town of Blaine was incorporated as a municipal corporation of the fourth class under the provisions of the act of March 27, 1890, and included within its area three square miles, nearly one-half of which was unplatted. The town at once assumed all the duties, and exercised all the powers, incident and belonging to municipal corporations of that class. Among other acts which it performed was the opening, grading, and sidewalking of streets and avenues, such improvements being confined to about one-sixth of the area of the town as defined by its boundaries. On March 4, 1891, in a suit in the nature of a *quo warranto* proceeding, instituted by the attorney general against said town and its acting officers, the incorporation was declared "illegal," and the act of the board of county commissioners in incorporating it "null and void," for the reasons, among others, which were enumerated in the judgment rendered therein, "that it contained an area of more than one square mile" and "more than forty acres of unplatted land." On May 4, 1891, following entry of the decree in the suit just referred to, the present city of Blaine

was incorporated, the boundaries of which comprised the same territory that had been known as the "Town of Blaine" except a narrow strip along the entire northern boundary containing about one hundred and twenty acres, which area had been a part of the town of Blaine, but did not, and does not, form any portion of the territory of the city of Blaine.

During the time the town of Blaine assumed the duties and exercised the powers of a municipal corporation of the fourth class, warrants were issued in payment of municipal expenses, including street crossings, aggregating $18,000, which warrants were drawn in the usual form of municipal warrants, and signed by the clerk and the mayor, and made payable from the general fund of said town; also warrants were issued in payment for street improvements, and payable from a special fund designated according to the name of the street upon which the consideration for the warrant had been expended, aggregating $96,000; assessment districts being created in each case, and assessments being made for the cost of such improvement. In November, 1891, the city of Blaine enacted an ordinance, known as "Ordinance No. 41," providing for the calling of an election to ratify and assume the indebtedness of the former "town of Blaine and the present city of Blaine," aggregating, as stated in Ordinance No. 41, "$63,700 and accrued interest." This sum was intended to include, and did include, all the unpaid warrants issued by the "town of Blaine," not only such warrants as were issued for general municipal purposes, and payable from the "general fund," but all the warrants issued by the "town of Blaine" for street improvements, and payable from special street improvement funds. At the same time Ordinance No. 41 was adopted, there was also an ordinance adopted by the city of Blaine, known as "Ordinance No. 40," providing for the calling of an election and submitting to the electors the proposition to "borrow $70,000 for the municipal purpose of funding the indebtedness of the present city of Blaine

and the former town of Blaine, and to issue its negotiable bonds, etc." Both of these ordinances were passed by the city council at a special meeting called for that purpose.

The election to vote upon the propositions contained in ordinances numbered 40 and 41 was held on December 7, 1891, and all the propositions contained in both ordinances were carried by more than the necessary three-fifths vote of the electors voting at such election. At the time this election was held, instead of the total amount of indebtedness as described in said ordinances, being, as stated therein, $70,-000, it was in fact $85,000, a sum of $15,000 in excess of five per cent of all the taxable property in the city of Blaine, as ascertained by the last assessment for municipal purposes. In June, 1892, the council of the city of Blaine passed ordinance No. 44, authorizing the issuance of the funding bonds, the subject of this suit. On each of these funding bonds was printed an act of the legislature of the state of Washington (Laws 1891, p. 261, chap. 128), and Ordinance No. 40, and specifically made a part of each of such funding bonds. Between September 30, 1893, and January 5, 1894, the mayor and clerk of the city of Blaine delivered these funding bonds to the holders of the warrants described in ordinance No. 41, in exchange for such warrants at par, until $66,600 of the $70,000 had been so delivered. The city of Blaine did not receive any consideration for the $66,600 funding bonds so exchanged, except the warrants described in said ordinance No. 41, which were in fact practically all the special street improvement fund warrants issued by the town of Blaine.

The total valuation of all taxable property of the city of Blaine, at the date of the election, when it attempted to assume and ratify the indebtedness of the former town of Blaine and authorized the issuance of the funding bonds to pay such indebtedness, as ascertained by the last assessment for general municipal purposes, was the sum of $1,412,513;

at which time the total amount of unpaid taxes due said city was $4,260, with no funds on hand. The total valuation of said city when said funding bonds were issued, as ascertained by the last assessment for general municipal purposes, was $738,162, and, on the date when the said bonds were exchanged for town of Blaine warrants, such valuation was $452,250.

We think this case is controlled by the principles announced by this court in the case of *State ex rel. Security Sav. Soc. v. Moss, ante* p. 91, 86 Pac. 1129. Upon the authority of that case, the judgment of the trial court herein is affirmed.

MOUNT, C. J., CROW, DUNBAR, HADLEY, FULLERTON, and RUDKIN, JJ., concur.