[No. 15719. *En Banc.* April 22, 1920.]

## D. O. PRATT, *Appellant*, v. THE CITY OF SEATTLE, *Respondent.*[1]

MUNICIPAL CORPORATIONS (134) — PUBLIC IMPROVEMENTS — ORDINANCE—CONSTRUCTION. In condemnation proceedings to pay compensation to property owners through a change of street grades, under an ordinance making no provision for the physical work contemplated, the cost of the "improvement" is descriptive of the proposition and has reference only to the cost of acquiring the property rights.

SAME (174-177)—EMINENT DOMAIN (64)—PUBLIC IMPROVEMENTS —INADEQUACY OR FAILURE OF SPECIAL FUND—GENERAL LIABILITY. Where a city took and damaged property by making a change of grade authorized by eminent domain proceedings, contemplating that the costs be assessed against property benefited, it became unconditionally bound under Const., art. 1, § 16, to make compensation therefor in accordance with the condemnation awards; hence, where the special fund failed when it was judicially determined that the property assessed was not benefited, the city had power to make the

---

[1] Reported in 189 Pac. 565.

cost a general charge against the city, and issue bonds to pay the same.

SAME. In such case it is immaterial that some of the owners had in form satisfied the condemnation awards in return for warrants issued against the special fund, which was never collected by the city; since the award is not in law satisfied until actually paid in money or general indebtedness warrants payable in due course.

SAME. Where a city undertook and completed physical improvements of streets to be paid for solely by funds to be raised by special assessments upon the property benefited, it is not liable generally for a deficiency arising when part of the assessments could not be collected because part of the property was not benefited and there was no other property benefited against which further assessments could be levied; and the city not being liable, it has no power to assume the deficiency as a general indebtedness of the city.

SAME. In such a case the fact that the city and the contractor were honestly mistaken in the belief that the special benefits would be sufficient to pay the costs of the improvement, does not authorize the city to assume a general indebtedness for the amount of the deficiency.

SAME. In such a case the deficiency is not such a moral obligation on the part of the city as to authorize the city to assume its payment, where there was no attempt by the city to change from a special assessmen plan to a general indebtedness prior to the completion of the improvement, and the ordinance expressly notified the contractor that the improvement was to be paid for wholly from special assessments, and that no part would be a general charge against the city.

Appeal from a judgment of the superior court for King county, Ronald, J., entered December 5, 1919, in favor of the defendant, dismissing an action to enjoin the issuance of bonds for a local improvement, tried to the court. Affirmed in part and reversed in part.

*Fred W. Catlett*, for appellant.

*Walter F. Meier* and *Robert H. Evans*, for respondent.

*Peters & Powell, Preston, Thorgrimson & Turner*, and *Donworth, Todd & Higgins*, amici curiae.

PARKER, J.—The plaintiff, Pratt, a resident and taxpayer of the city of Seattle, commenced this action in the superior court for King county, seeking a judgment enjoining the city and its officers from consummating two proposed bond issues evidencing a general indebtedness of the city; one for $270,000 and one for $110,000, the former to pay judgments awarding compensation for the taking and damaging of private property resulting in the change of grades of Shilshole avenue made in eminent domain proceedings prosecuted by the city, and the latter to pay the cost of the physical improvement of that avenue at the grades as changed. In the initial ordinances authorizing the condemnation proceedings and the making of the physical improvement, the city provided for the payment of compensation to the owners of the property to be taken and damaged by the change of grades and for the physical improvement, exclusively by assessments against the property which it was then supposed would be benefited thereby; which plans for raising funds to pay such damages and cost of the physical improvement were thereafter changed by the city to that of making the whole cost of both propositions a general indebtedness of the city, which it is now proposed to evidence by the bond issues in question. The case was submitted to the superior court for final decision upon the admitted facts appearing in the pleadings, resulting in a judgment denying to the plaintiff the relief prayed for, and dismissing the action. From this disposition of the case, the plaintiff has appealed to this court. The question of the legality of each of the bond issues is presented in a separate cause of action. While they have some facts in common, we think the controlling legal principles lead to different results. We shall, therefore, discuss them separately.

The controlling facts of the case touching the rights of appellant and the power of the city, in so far as we are here concerned with the first cause of action, may be summarized as follows: On August 15, 1912, the city passed ordinance No. 29,834, changing the established grades of Shilshole avenue, and directing the corporation counsel to commence and prosecute condemnation proceedings in the superior court for King county to the end that the city acquire the necessary property rights to enable it to make such change of grades. It was provided in this ordinance:

"That the entire cost of the improvement provided for herein shall be paid by special assessment upon property specially benefited in the manner provided by law, and that no part thereof shall be paid from the general fund of the city of Seattle."

While the word "improvement" is there used as descriptive of the proposition, manifestly it does not mean physical improvement, since the ordinance makes no provision for any such improvement, though, of course, the city authorities no doubt contemplated the making of a physical improvement at the changed grades, after acquiring by condemnation proceedings the right so to do. It is equally plain that the words "cost of the improvement," as used in this quoted portion of the ordinance, mean only the cost of the acquisition of such property rights as will enable the city to thereafter physically improve the avenue at the changed grades. Thereafter condemnation proceedings were accordingly commenced and prosecuted in the name of the city in the superior court for King county, resulting in an adjudication that the contemplated use of the property rights so sought to be acquired by the city was a public use, and in verdicts and judgments awarding the owners of the property compensation for their property to be taken and dam-

aged for such use. Some of these judgments were, in form, satisfied upon the record of judgments in the superior court, the judgment creditors receiving therefor from the city warrants upon the special assessment fund which it was contemplated would thereafter be created and raised by special assessment against property it was thought would be benefited by the change of the grades. The balance of the judgments remain wholly unsatisfied and unpaid in any form. These satisfactions, in form, of some of the judgments, we must presume were in the manner and for the purpose as provided by § 953, Rem. Code, which requires a judgment creditor of a municipality to first satisfy his judgment upon the judgment records of the superior court and then take a certified transcript of the judgment and the satisfaction so made of record to the proper officer of the municipality liable to pay the same, when he becomes entitled to payment of the judgment.

Following the entry of the condemnation judgments awarding compensation for property taken and damaged, the eminent domain commissioners of the city prepared an assessment roll, charging the entire cost thereof against the property supposed to be benefited by the change of grades. A hearing in the superior court upon the return of the assessment roll so made, as provided by §§ 7787-7796, Rem. Code, resulted in the entry of an order by that court sustaining the right to levy special assessments to pay the cost of acquiring and damaging the private property as adjudged, over the objections of the owners of the property sought to be so assessed, and re-referring the assessment roll to the eminent domain commissioners with direction to make certain modifications in the assessment as originally made by them. The objecting property owners thereupon appealed to this court from the

order of the superior court, in so far as it sustained the right of the city to make any assessment to pay the cost of acquiring the property rights condemned by the city. Thereafter, on May 18, 1915, that order and judgment of the superior court was reversed by this court, it being held that none of the property of any of the objectors would receive any benefits whatever from the change of grades as made by the city. (*In re Shilshole Avenue,* 85 Wash. 522, 148 Pac. 781.) That decision contains a history in considerable detail of that controversy, which, while interesting in this connection, need not be further noticed here. The city has never made, or attempted to make, any other assessment roll looking to the raising of funds to pay the unsatisfied judgments, or those which were in form satisfied, or the special fund warrants issued for the latter. On May 1, 1918, the city passed ordinance No. 38,374, amending the above quoted portion of ordinance No. 29,834 to read as follows:

"That the entire cost of the improvement provided for herein shall be paid from the general fund of the city of Seattle or such other fund as the city council shall direct."

Thereafter, on the same day, there was passed ordinance No. 38,377, providing for the issuance of $270,000 of bonds evidencing a general indebtedness of the city, to raise funds to pay all of the judgments rendered in the condemnation proceedings, including the special warrants issued to those whose judgments were in form satisfied. This is the proposed bond issue included in the first cause of action, sought to be enjoined. The city has taken possession of all the property and caused all the damages for which the condemnation judgments awarded compensation, and has physically improved the street at the grades, but the city has not paid any of those judgments, except

merely in form, as above stated, though it has now full
enjoyment of all the rights sought to be acquired by
it in the condemnation proceedings.

Our problem, presented by the first cause of action,
in its last analysis, as we view it, is this: Has the city
the power to assume and pay as a general indebted-
ness the condemnation judgments awarding compen-
sation for the property taken and damaged which en-
abled it to lawfully change the street grades in ques-
tion? Counsel for appellant contend that the city does
not have such power, because the condemnation pro-
ceedings were commenced and prosecuted to final judg-
ments only by authority of ordinance No. 29,834,
which, in effect, provided that the entire cost of acquir-
ing the property rights sought to be condemned should
be paid by special assessments upon the property spe-
cially benefited by the change of the street grades in
question. In that behalf counsel invoke the law as
announced in our decisions holding, in substance, that,
when a municipality initiates a local improvement pro-
ceeding and constructs the improvement with the
avowed purpose, from the beginning, to pay therefor
exclusively from the proceeds of special assessments
against property which it is contemplated will be bene-
fited thereby, the city does not become liable for any
part of the cost of such improvement as a general
indebtedness; citing, *State ex rel. Security Sav. Soc.
v. Moss,* 44 Wash. 91, 86 Pac. 1129; *State ex rel. Barnes
v. Blaine,* 44 Wash. 218, 87 Pac. 214; *State ex rel.
American Freehold-Land Mtg. Co. v. Tanner,* 45 Wash.
348, 88 Pac. 321; *State ex rel. National Bank v. Ta-
coma,* 97 Wash. 190, 166 Pac. 66. These, and several
other decisions by this court so holding which counsel
might have cited, all have to do with the construction
of physical improvements as local improvements.
None of them involved the taking or damaging of pri-

vate property by a municipality in the exercise of its power of eminent domain.

It seems to us that a recurrence to the guarantee of our constitution that, "no private property shall be taken or damaged for public  .  .  .  use without just compensation having been first made" (section 16, art. 1, constitution), renders it at once plain that the city of Seattle, when it took and damaged the private property for which compensation was awarded in the judgments rendered in the condemnation proceedings which it commenced and prosecuted in the exercise of its power of eminent domain, became unconditionally bound to the persons whose property it so took and damaged, to make compensation therefor in accordance with the judgments rendered. These private property owners were not voluntary sellers of their property rights.. They entered into no voluntary contract with the city agreeing to look to any questionable source of payment for their property rights so parted with. They were bound to submit to the city's taking and damaging of their property through the orderly procedure of condemnation. True, they were not bound to surrender possession of their property or to submit to it being damaged before actually receiving compensation therefor; but the fact that they did permit the city to actually take and damage their property, after the rendering of the condemnation judgments awarding them compensation and before they received such compensation, we are of the opinion, is not a fact which the city should be permitted to set up and take advantage of, even if it desired so to do, to avoid its full constitutional duty to make just compensation according to this mandate of our constitution. It may be that the constitutional debt limit of the city would, if exceeded when the obligation to make compensation was incurred, stand in the way of making such com-

pensation as for taking private property in the exercise of the city's power of eminent domain, and that such situation would work an exception to the rule we announced; but even then we apprehend that the city would be legally liable to make restitution of the property taken, and, also, restitution in the form of damages to the extent that the situation rendered it impossible to otherwise restore the property rights of the private owners as they existed before the taking and damaging of their property. We need not, however, pursue this interesting inquiry, since there is no question of the constitutional debt limit of the city presented to us on this appeal, though it does seem to have been a question in the superior court, where it was decided that neither of these proposed bond issues would cause the city to exceed its constitutional debt limit.

In *Kincaid v. Seattle,* 74 Wash. 617, 134 Pac. 504, 135 Pac. 820, there was involved the question of the necessity of presentation of a claim for damages to the city as a prerequisite to the right of the claimant to sue the city seeking recovery of compensation for damages suffered by him from the city's occupancy of a portion of his lot by a supporting slope in the making of a street improvement. Holding that the city, having so occupied the lot, did so in the exercise of its power of eminent domain, and that the plaintiff was entitled to compensation, not as for a tort, but as a matter of constitutional right, and that therefore he was not required to file his claim with the city as a prerequisite to the right to seek compensation in the courts, Judge Chadwick, speaking for the court, said:

"The remedy of the one whose property is taken is immaterial so long as it leads to compensation as provided in the constitution. The city is bound to make compensation under a compact no less formal than the

constitution itself, and it cannot defeat this constitutional right by a charter provision or an ordinance, nor can the legislature take it away by any arbitrary requirement, although we may admit that it could, as in all other cases, fix a time within which an action must be brought to recover damages that have not been first ascertained and paid. The city must be held to adopt the guarantee of the constitution and make it its promise."

Further observations and review of the authorities in that exhaustive opinion also render it plain that a private property owner's right to compensation under the constitution is as unconditional and absolute after he has voluntarily permitted the municipality to take and damage his property in the exercise of its power of eminent domain as is his right to withhold possession of his property sought to be so condemned or prevent damage thereto before compensation therefor is actually made. Our later decisions in *State ex rel. Peel v. Clausen,* 94 Wash. 166, 162 Pac. 1, and *Jacobs v. Seattle,* 100 Wash. 524, 171 Pac. 662, L. R. A. 1918E 131, adhere to this view of the unconditioned right of a private property owner to compensation when he seeks to assert such right in the courts, after having parted with possession of his property or suffered damage in the exercise by the state or a municipality of the power of eminent domain, as well as when he seeks to assert such right by securing compensation before the taking or damaging of his property.

Some contention is made on behalf of appellant that those private owners whose property was taken and damaged, who have, in form, satisfied the condemnation judgments rendered in their favor, and who had issued to them warrants upon the prospective special assessment fund, are, in effect, estopped from claiming that the city is legally liable to them as a general indebtedness of the city. We have seen that we must

assume that these judgments were satisfied in form as provided by § 953, Rem. Code, which requires them to be satisfied of record, and the presentation by the judgment creditor of a transcript of such judgment and satisfaction to the proper disbursing officer of the city, to the end that the amounts thereof be paid in due course. We are of the opinion that those property owners, or their assigns, assuming that some of the warrants may have been transferred, who, of course, stand in the shoes of the judgment creditor property owners, are in no different position than the judgment creditors whose judgments have not been so satisfied. This, we think, must follow from the absolute unconditional nature of the obligation the city assumed when it took and damaged the property in the exercise of its power of eminent domain. Manifestly, when a judgment creditor goes to the clerk of the superior court and satisfies his judgment upon the records with a view to collecting it from the municipality against which it runs, it is not in law satisfied so as to relieve the municipality from liability thereon until the municipality actually pays the judgment creditor in money; or, in any event, gives him a warrant chargeable against the municipality as a general indebtedness, to be paid in due course.

We are quite convinced that the city cannot escape liability as a general debtor owing the amount of compensation awarded to the private owners of property taken and damaged by it in the exercise of its power of eminent domain, even though in the inception of the project for which it so takes or damages private property it avowedly proclaims that payment is to be made from funds to be raised exclusively by special assessments. The city may, of course, make its intention known in the beginning that it expects to resort only to the local assessment to raise sufficient funds to

pay for the necessary taking and damaging of private property, and finding that sufficient funds cannot be so raised, abandon its project; but it cannot go to the extent of actually taking and damaging the property and escape paying compensation therefor as a general indebtedness, though it may escape such a libility in the making of a physical improvement as a local improvement, where those who make the improvement voluntarily enter into contractual relations with the city, agreeing to look only to a special assessment fund. The judgment of the superior court, in so far as it denies appellant relief upon his first cause of action involving the $270,000 proposed bond issue, is affirmed.

The controlling facts of the case touching the rights of appellant and the power of the city, in so far as we are here concerned with the second cause of action, may be summarized as follows: Soon after the passage of ordinance No. 29,834, authorizing and directing the commencement of prosecution of condemnation proceedings, above noticed, the city passed ordinance No. 30,389, providing for the physical improvement of Shilshole avenue at the changed grades, it evidently being assumed that the condemnation proceedings would soon be prosecuted to a successful determination and the city thereby acquire the necessary rights to enable it to proceed with the physical improvement. This ordinance seems to be in the usual form of initiatory local improvement ordinances which look to the physical construction of such improvements and the paying of the entire cost thereof by special assessments against property which may be benefited thereby. It contains, among other provisions, the following:

"The cost and expense of said improvement, including all necessary and incidental expenses, shall be borne by and assessed against the property included

in the assessment district hereinafter created in accordance with law. The city of Seattle shall not be liable in any manner for any portion of the cost and expense of said improvement, except as herein provided.''

The words ''except as herein provided,'' read in the light of other provisions of the ordinance, render it plain that they do not mean that the city assumes any other obligation looking to the payment of the cost of the improvement than that it will, in good faith, attempt to levy special assessments sufficient to pay the entire cost of the improvement and apply the proceeds thereof to the payment of such cost. Thereafter, solely by authority and in pursuance of the provisions of this ordinance, the proper officers of the city duly awarded and entered into a contract for the construction of the improvement, and the improvement being completed as contracted for, an assessment roll was prepared in usual form, charging and apportioning the entire cost of the improvement against property claimed to be benefited by the improvement. This assessment roll was placed on file with the city council and duly noticed for the hearing of objections thereto which might be made by the owners of property so charged with the cost of the improvement, as provided by § 7892-21, Rem. Code. Thereupon a considerable number of the owners of property so sought to be assessed filed objections to the assessment roll, claiming that their property received no benefit from the improvement. The city council overruled these objections and passed an ordinance finally confirming the assessment roll as made and filed. To the end that there be no uncertainty as to the city's claim of what disposition was made of the matter upon appeal to the superior court, we quote the language of its affirmative answer in this case, as follows:

"That thereafter the property owners protesting against said roll appealed to the superior court of King county from the order of the city council confirming said roll, and said cause was duly heard in said court, with the result that thereafter the superior court, on the 29th day of February, 1916, entered an order modifying and cancelling the assessments made against the property of said protestants. That this had the effect of creating a large deficiency in said local improvement district No. 2601. That assessments in the amount of $59,333.98 were wholly cancelled by said decree of the court. That, as regards other property protesting, the superior court made deductions amounting to large sums of money, which further created a deficit in said roll of approximately $31,000."

This is all the information the record before us furnishes touching the nature and extent of the judgment of the superior court. This judgment was affirmed in all respects upon an appeal taken therefrom by the city to this court, on February 8, 1917. (*In re Shilshole Avenue*, 94 Wash. 583, 162 Pac. 1010.) While the total amount of the cost of the improvement does not appear in the record before us, it would seem, from the general nature and extent of the improvement, that its total cost was a very large sum and far in excess of the amounts of the deficiency specified in the above quoted language of the city's affirmative answer. It is, in any event, certain that the judgments of the superior court and of this court created only a partial deficiency and left a large portion of the assessments undisturbed and in full force. The city authorities being of the opinion that, by reason of the decisions of the superior court and this court, the city was without power, because of lack of special benefits, to make a new assessment or re-assessment of the property of the objectors in whose favor these decisions were rendered, and being also of the opinion that no additional assessments, because of lack of benefits, could be made

against the property of others, it abandoned all further attempt to raise sufficient funds by special assessment to pay the deficiency so created, and on April 9, 1918, passed ordinance No. 38,339, by the terms of which it assumed, as a general indebtedness of the city, the total amount of the deficiency so created, together with accumulated interest thereon as evidenced by outstanding warrants theretofore issued against the special local assessment fund; and authorized the issuance, for the payment thereof, of $110,000 of general indebtedness bonds of the city. It is by his second cause of action that appellant seeks to enjoin the city from assuming this obligation as a general indebtedness and evidencing the same by this proposed bond issue.

The contentions here made in appellant's behalf in support of his second cause of action are substantially the same as made in support of his first cause of action, which we have already considered; that is, that the city authorities are attempting to create a general indebtedness of the city to pay an obligation which it is neither legally liable to pay as a general indebtedness, nor legally authorized to voluntarily pay as a general indebtedness. We have seen that the obligation involved in the first cause of action is one which the city is legally liable to pay as a general indebtedness because of the constitutional rights of the persons whose property the city took and damaged in the exercise of its power of eminent domain; but we think the legal liability of the city to pay, as a general indebtedness, this obligation, is quite a different matter. It has been uniformly held by this court that municipalities are not legally liable to pay from their general funds any of the cost of the physical construction of local improvements which they avowedly initiate and carry to completion to be paid for solely from funds to be raised

by special assessment against property which it is contemplated will be benefited thereby, and this is so even though the special assessment prove unavailing in raising sufficient funds to pay the cost of such improvement. *Wilson v. Aberdeen,* 19 Wash. 89, 52 Pac. 524; *Rhode Island Mortgage & Tr. Co. v. Spokane,* 19 Wash. 616, 53 Pac. 1104; *Northwestern Lumber Co. v. Aberdeen,* 20 Wash. 102, 54 Pac. 935; *Northwestern Lumber Co. v. Aberdeen,* 22 Wash. 404, 60 Pac. 1115; *Potter v. Whatcom,* 25 Wash. 207, 65 Pac. 197; *State ex rel. Security Sav. Soc. v. Moss,* 44 Wash. 91, 86 Pac. 1129; *State ex rel. Barnes v. Blaine,* 44 Wash. 218, 87 Pac. 124; *State ex rel. American Freehold-Land Mortgage Co. v. Tanner,* 45 Wash. 348, 88 Pac. 321; *Soule v. Ocosta,* 49 Wash. 518, 95 Pac. 1083; *State ex rel. National Bank of Tacoma v. Tacoma,* 97 Wash. 190, 166 Pac. 66.

Counsel for the city seek to avoid the force and application of this well settled rule to this branch of the case by alleging in its affirmative defense, in substance, that there was a mutual mistake, both of law and fact, on the part of both the city and contractor constructing the improvement, in that they both believed, and in good faith proceeded upon the assumption, that the special assessments contemplated could be lawfully made upon property benefited by the improvements in a sufficient amount to pay the entire cost of the improvement. To our minds, the city's allegations in this behalf amount to nothing more than that it and the contractor were honestly mistaken in their belief that the special benefits resulting from the construction of the improvement would be sufficient in amount to pay the entire cost thereof. We are clearly of the opinion that this would not render the city legally liable to pay any part of the cost of the improvement as a general indebtedness of the city. To hold that

such a mistake would have such an effect would be to ignore the reasoning that lies at the very foundation of the decisions above cited. We therefore conclude that the present attempt on the part of the city authorities to pay this special assessment deficiency, as a general indebtedness of the city, is an attempt to assume, as a general indebtedness of the city, an obligation which the city is under no legal liability whatever to assume or pay.

The question remains, does the deficiency in the special assessment fund constitute such a moral obligation of the city that it may voluntarily assume and pay the same as a general indebtedness. It is to be remembered that this is not a case of the city changing from a special assessment plan of paying for the improvement to that of paying for it as a general indebtedness, before the entering into of the contract for its construction, or even before its final completion as contracted for. The method of payment exclusively by special assessment was determined upon and fixed in the original ordinance authorizing the construction of the improvement, which ordinance in express terms, in effect, notified the contractor and all the world that the improvement was to be paid for wholly from the proceeds of special assessments to be charged against property that might be benefited thereby, and that no part of the cost thereof would be a general charge against the city. No doubt the contractor made his bid accordingly. No attempt was made on the part of the city to change the plan of payment until long after the completion of the construction of the improvement by the contractor, when the city attempted to make such change by the passage of the ordinance assuming to make the deficiency a general indebtedness of the city and evidence the same by this proposed $110,000 bond issue.

The decision of this court in *State ex rel. American Freehold-Land Mortgage Co. v. Tanner*, 45 Wash. 348, 88 Pac. 321, seems to us in principle decisive in favor of appellant's contention here made. In that case the city of Port Townsend agreed with holders of warrants issued against special local assessment funds, created with a view of their being the exclusive source of payment of the cost of local improvements, that it would permit the warrant holders to obtain judgments against it in the superior court for Jefferson county by default, and would thereupon satisfy the judgments by the issuance of warrants against the general funds of the city, thereby making the special assessment obligation a general indebtedness of the city. This plan being consummated, it seems to us, the parties were in the same position as if they had consummated a contract by which the city should assume a special assessment indebtedness as a general indebtedness, since the judgments were taken by default against the city in pursuance of an agreement to that effect. A subsequent administration of the city refused to honor the agreement and the default judgments taken in pursuance thereof, and by proper action in the superior court of that county, it was adjudged that such default judgments were taken through collusion and fraud on the part of the city. They were accordingly set aside and the city absolved from its contract by which it, in effect, assumed the special assessment indebtedness as a general indebtedness. That judgment was affirmed by the decision of this court. As we understand its reasoning, as applicable to the situation here involved, the rendering of the judgments by collusion and the setting aside of them for that reason was only incident to the controlling principle involved, which was, that the special assessment obligation was not one that the city had power to voluntarily assume after the com-

pletion of the local improvements, they having been initiated and carried to completion with the avowed purpose on the part of the city that their entire cost should be paid for from the funds to be raised by special assessments against property benefited thereby. Our recent decision in *State ex rel. National Bank of Tacoma v. Tacoma,* 97 Wash. 190, 166 Pac. 66, is in full harmony with this view of the law. It is true that in that case the city was not attempting to pay special assessment obligations as general indebtedness of the city, but it was attempting to pay special assessment obligations with funds over which the city had control other than those which were the proceeds of the special assessments levied to pay the cost of the particular improvements. Judge Holcomb, speaking for the court, made this observation:

"The city had no power to provide for the payment of the obligations of the improvement district or the bonds to pay the obligations thereof except in the manner provided by law, and the law limited the payment to the assessments against the property. These improvement districts are special creatures of the law and each of them must stand by itself. The only way in which a deficiency can be provided for in any one district is by another assessment in each case."

Our former decisions in *State ex rel. Security Sav. Soc. v. Moss,* 44 Wash. 91, 86 Pac. 1129, and *State ex rel. Barnes v. Blaine,* 44 Wash. 218, 87 Pac. 124, are in harmony with this view of the law. Nor are these decisions the sole support of appellant's contentions upon this branch of the case. In § 28, art. 4, of the charter of Seattle, we read:

"Neither the city council nor any officer, board, department or authority shall allow, make valid or in any manner recognize any demand against the city which was not at the time of its creation a valid claim against the same, nor shall they or any of them ever

allow or authorize to be paid any demand which, without such action, would be invalid, or which shall then be barred by any statutes of limitation, or for which the city was never liable, and any such action shall be void.''

Our conclusion is that not only are the city authorities attempting to assume, as a general indebtedness, an obligation which the city is not legally liable to pay as such an indebtedness, but that the city authorities are plainly exceeding their power in attempting to cause the city to voluntarily assume such obligation as a general indebtedness.

The judgment of the superior court, in so far as it refuses injunctive relief as prayed for in appellant's second cause of action, to prevent the assumption by the city of this special assessment indebtedness as a general indebtedness and evidencing of the same by the proposed $110,000 bond issue, is reversed, and the cause remanded to the superior court with directions to render its judgment awarding an injunction accordingly.

Appellant is awarded his costs incurred in this appeal.

HOLCOMB, C. J., TOLMAN, MACKINTOSH, MITCHELL, MOUNT, MAIN, and BRIDGES, JJ., concur.